OPINION OF THE COURT
Joseph P. Kuszynski, J.
Plaintiff, James McKee, Jr., who maintains he has developed the disease asbestosis as the result of his 30 years as an insulation employee, brings this action against 14 defendants who allegedly manufactured and marketed the asbestos products.
Defendants herein named, pursuant to CPLR 3211 (subd [a], par 5) move to dismiss the complaint and the cross complaints of the codefendants upon the ground the actions were not commenced within the time provided for in the Statute of Limitations, and also pursuant to CPLR 3212 for summary judgment.
Plaintiff’s complaint contains three causes of action collectively against the defendants in negligence, strict products liability in tort and for breach of warranty. It sets forth that "by reason of exposure to and inhalation of asbestos particles and dust as well as other contaminants found in defendants’ products and materials”, the plaintiff contracted asbestosis and pulmonary fibrosis.
To date the defendants have had a deposition before trial of the plaintiff and of his treating physician, Dr. Howard Paul Longstreth, while plaintiff as yet, has not had any discovery proceedings. Therefore, defendant Fibreboard Paper Products Corporation’s motion to dismiss because of plaintiff’s failure during his oral deposition to specifically identify Fibreboard as a manufacturer of any asbestos-containing product he may have handled, and defendant Armstrong Cork Company’s similar motion in relation to its product called "Armaspray” and "L. T. Cork Covering” are premature. They are denied without prejudice to being renewed when plaintiff’s discovery proceedings are concluded.
Most critical, however, to plaintiff’s lawsuit is the issue of the the Statute of Limitations.
Mr. McKee alleges in his complaint that he has been disabled since October 30, 1972 and his condition was first *330 diagnosed as "asbestosis-pulmonary fibrosis”, some time in the 2-week period between March 29, 1973 and April 13, 1973. Defendants maintain that according to his medical records, the plaintiff may have suffered from this disease since 1968.
Plaintiff states he is unemployed since 1970, except for a period from August, 1972 to October 29, 1972, during which he worked for Frontier Insulation Co. At the deposition before trial and at the Workmen’s Compensation Board hearing concerning his compensation claim, Mr. McKee stated he did not know whether any asbestos was involved in the course of this employment. The superintendent at Frontier Insulation, Robert Wopperer, testified at the compensation hearing, however, that the materials plaintiff worked with did not contain asbestos. Defendants set forth in the moving papers that "Thereafter when Frontier Insulation sought to be discharged, Mr. McKee’s counsel conceded that plaintiff had not used any asbestos products and that the Referee subsequently discharged Frontier Insulation on the basis that plaintiff has not been exposed to asbestos during that employment.” While determinations of administrative boards are not necessarily binding on the courts of law, the doctrine of collateral estoppel prevents plaintiff from relitigating the issue of whether he was exposed to asbestos during 1972 when he was employed at Frontier Insulation. (See Ogino v Black, 304 NY 872; Doca v Federal Stevedoring Co., 280 App Div 940, affd 305 NY 648; Schwartz v Public Administrator of County of Bronx, 24 NY2d 65.) Especially so, since Mr. McKee in his answering papers had failed to preserve this question in any way as a triable issue.
Thus, for the Statute of Limitations purposes, Mr. McKee’s last exposure to asbestos was during his employment in 1970 and arguably the diagnosis of his condition was not made until March or April, 1973. The summonses were served upon the defendants in August, 1975.
Proceeding now to consider the causes of action alleged against the defendants: "A cause of action for strict products liability is 'independent’ (Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, 382) of a cause of breach of warranty (or negligence) and the fact that one is barred does not preclude the other.” (Murphy v General Motors Corp., 55 AD2d 486, 488.)
It is imperative that this court consider the Statute of *331 Limitations separately as to each cause of action in determining whether plaintiff’s lawsuit is barred.
The first cause of action is framed in the traditional negligence setting and is controlled by the requisites as set forth in Schmidt v Merchants Despatch Transp. Co. (270 NY 287). Here, for plaintiff to succeed, it is necessary for him to allege and show both diagnosis and exposure within the three-year period preceding the action. A direct challenge to Schmidt (supra) was rejected in Schwartz v Heyden Newport Chemical Corp. (12 NY2d 212, 216-217, cert den 374 US 808) when the court stated: "The wrong is done, the right violated, and the cause of action complete when the invasion takes place, independently of any actual pecuniary damage.”
Therefore, plaintiff McKee’s action in negligence is barred by the Statute of Limitations (CPLR 214) because he was not exposed to asbestos while employed, during the period of three years preceding the service of the summons upon the defendants.
Mr. McKee’s second cause of action is anchored on the theory of strict products liability established in this State by Codling v Paglia (32 NY2d 330). Strict products liability is a separate and distinct cause of action from traditional negligence and as such, is not controlled by the Statute of Limitations established in Schmidt (supra). The period of limitation as to a claim grounded on this approach to liability was determined to begin to run at the time of injury and continues for a period of three years. (Victorson v Bock Laundry Mach. Co., 37 NY2d 395.)
The enigmatic question then surfaces as to when did the "injury” occur. A review of the cases in the area reveals this question to be unanswered by the courts of this State in its application to "occupational diseases” actions brought under the theory of strict products liability. Recent decisions in other jurisdictions have generally held that the issue of the Statute of Limitations in such cases is a proper factual matter for the jury or the trier of the facts to decide, and that the date of diagnosis should measure the date the Statute of Limitations begins to run, unless the defendants can show that the plaintiff should, in the exercise of reasonable diligence, have earlier discovered the nature of the disease. (Ricciuti v Voltarc Tubes, 277 F2d 809; see, also, Karjala v Johns-Manville Prods. Corp., 523 F2d 155; Borel v Fibreboard Paper Prods. Corp., 493 F2d 1076.)
*332 In New York, it has been previously held that the question of determining the time of injury, for purposes of fixing the time the Statute of Limitations began to run, is a proper triable issue. (Orloff Towers v Vermilya-Brown Co., 50 AD2d 740.)
"[Tjhere is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort. It is when the disease manifests itself in a way which supplies some evidence of causal relationship to the manufactured product that the public interest in limiting the time for asserting a claim attaches and the statute of limitations will begin to run. The time at which Karjala’s impairment manifested itself was, of course, for the jury to determine.” (Karjala v Johns-Manville Prods. Corp., supra, pp 160-161.)
Furthermore, recent analogous New York State decisions on the application of "date of discovery rule” to medical malpractice actions are in accord with the rule that a Statute of Limitations begins to run from the time of discovery of the disease in occupational disease cases. (See Flanagan v Mt. Eden Gen. Hosp., 24 NY2d 427; Matter of Smalls v New York City Health & Hosps. Corp., 55 AD2d 537; Merced v New York City Health and Hosps. Corp., 56 AD2d 553.)
It appears the incubation period for asbestosis ranges up to as long as 15 to 25 years. Therefore, measuring the injury from the date of a last exposure would effectively deny relief to many workers who were employed in the industry for a lesser period.
"We think it unreasonable to hold that the statute of limitations begins to run against an injured person at a time when he does not in fact know, and could not with the exercise of reasonable diligence, know, what his injury is. To so hold would nullify any right to recover for many serious but slowly and insidiously developing diseases.” Ricciuti v Voltarc Tubes, 277 F2d 809, 813, supra; see 63 Harv L Rev 1177.)
The deposition of plaintiff’s physician, Dr. Howard Paul Longstreth, the negative biopsy performed upon plaintiff in March, 1968 and the absence of any contradictory medical proof are sufficient to preserve the issue of the date of McKee’s injury by asbestosis for trial. The time of the diagnosis marks the date the Statute of Limitations began to run, unless the defendants can show that the plaintiff should have, *333 in the exercise of reasonable diligence discovered earlier the nature of the disease.
Plaintiff’s third cause of action is grounded upon defendants’ alleged breach of warranty of fitness and merchantability stemming from the contract of sale of the asbestos by the manufacturers to plaintiff’s employers. It is controlled by a four-year Statute of Limitations commencing at the time of sale. (Uniform Commercial Code, § 2-725, see McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 2-725, NY Annotations.) This action is barred because defendants clearly could have only sold the asbestos products allegedly involved in plaintiff’s injury to his employers prior to the termination of his employment in 1970, more than four years before the service of the summonses.
This court finds that plaintiff McKee’s theories of recovery based upon negligence and breach of warranty are barred by the applicable Statutes of Limitations; plaintiff’s theory of strict products liability, however, is viable because the question of when the injury occurred is a triable issue.
Leave is granted to defendants to preserve their objections concerning the Statute of Limitations as an affirmative defense. Their answers are due within 20 days of the entry of the order herein.