471 So.2d 533 (1985)
CELOTEX CORPORATION, et al., Petitioners,
v.
Lee Loyd COPELAND, et al., Respondents.
Nos. 65124, 65154 and 65394.
Supreme Court of Florida.
June 13, 1985.
Thomas C. MacDonald, Jr., Clark Jordan-Holmes, Charles P. Schropp and Raymond T. Elligett, Jr., of Shackleford, Farrior, Stallings & Evans, James W. Kynes, Tampa; Julian Clarkson of Holland & Knight, Tallahassee, for petitioner The Celotex Corp.
James E. Tribble, Diane H. Tutt and James C. Blecke of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for petitioner Owens-Corning Fiberglas Corp.
Michael K. McLemore of Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Miami, for petitioner Eagle-Picher Industries, Inc.
Michael T. McKenna of Knecht & Whelchel, Coral Gables, for petitioner Nicolet, Inc.
C. Bryant Boydstun, Jr., of Lyle & Skipper, St. Petersburg, for petitioner Fibreboard Corp.
Arthur H. Taylor of Spencer, Taylor & Homer, Miami, for petitioner The Flintkote Co.
Jane N. Saginaw of Baron & Associates, Dallas, and Louis S. Robles, Miami, for respondents.
Norwood S. Wilner, of Zisser, Robison Spohrer, Wilner & Harris, Jacksonville, for amicus curiae Keene Corp.
Steven R. Berger and Wolpe & Leibowitz, Miami, for amicus curiae H.K. Porter Co., Inc.
Carl D. Motes and Kimberly A. Ashby of Maguire, Voorhis & Wells, Orlando; and Jon W. Zeder and Douglas M. Halsey of Thomson, Zeder, Bohrer, Werth, Adorno & Razook, Miami, for amicus curiae Florida Defense Lawyers Association.
*534 Robert M. Klein and Caron E. Speas of Stephens, Lynn, Chernay, Klein & Zuckerman, Miami, for amicus curiae Pittsburgh Corning Corp.
James C. Rinaman, Jr., and Tracey I. Arpen, Jr., of Marks, Gray, Conroy & Gibbs, Jacksonville, for amicus curiae Owens-Illinois, Inc.
Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, West Palm Beach, for amicus curiae The Academy of Florida Trial Lawyers.
OVERTON, Justice.
This asbestos-related injury case is before us on three petitions to review two decisions of the Third District Court of Appeal reported as Copeland v. Celotex Corp., 447 So.2d 908 (Fla. 3d DCA 1984) (Celotex), and Copeland v. Armstrong Cork Co., 447 So.2d 922 (Fla. 3d DCA 1984) (Armstrong). The district court decisions involve the same basic factual circumstances relating to a suit instituted by Copeland, a former asbestos worker who contracted asbestosis and asbestos-related cancer, and his wife against sixteen manufacturers of asbestos products.
In Celotex the district court, in a split decision, reversed the trial court's grant of Celotex's motion to dismiss for failure to state a cause of action and expressly approved the use of the market share theory of liability in asbestos cases. The district court, in a separate order, certified the following question as being of great public importance:[1]
Whether market share liability as announced in Sindell v. Abbott Laboratories, 26 Cal.3d 588, 607 P.2d 924, 163 Cal. Rptr. 132, cert. denied, 449 U.S. 912 [101 S.Ct. 285, 66 L.Ed.2d 140], should be adopted in Florida.
For the reasons expressed, we answer the certified question in the negative and quash the decision of the district court. We find the record indicates that Copeland has a proper cause of action against identified manufacturers of asbestos products and, therefore, there is no need to adopt the market share theory of liability in this cause.
In Armstrong the trial court granted summary judgments in favor of all petitioners on the ground that the statute of limitations barred the Copelands' action. In reversing, the district court found that, under the particular facts of this case, summary judgment was not proper because there was an issue of fact as to when the asbestos exposure manifested itself in a way that provided evidence of a causal relationship to the asbestos product. The district court also approved the use of the market share theory in accordance with its decision in Celotex. We find conflict with Vecta Contract, Inc. v. Lynch, 444 So.2d 1093 (Fla. 4th DCA), review denied, 453 So.2d 44 (Fla. 1984).[2] We approve that part of the Armstrong decision concerning the statute of limitations but, in accordance with our decision in Celotex, we quash that portion relating to the market share theory of liability.

Facts
The facts of this cause are as follows. Copeland worked from 1942 until 1975 as a boilermaker. During this time he was exposed to various asbestos products while employed in from 50 to 100 different jobs. Copeland became aware of the possible health hazards of asbestos dust in 1958 or 1959, but he did not suffer any physical problems until the late 1960's, and he was not conclusively diagnosed as having asbestosis until 1978.
Copeland and his wife filed suit in 1979, alleging that Copeland had been exposed to and injured by asbestos products manufactured and distributed by sixteen corporate defendants or their predecessors in interest. The sixteen companies originally named as defendants in the action are: Armstrong World Industries, Inc.; The Flintkote Company; GAF Corporation; Owens-Corning Fiberglas Corporation; Owens-Illinois, *535 Inc.; Johns-Manville Sales Corporation; Eagle-Picher Industries, Inc.; Combustion Engineering, Inc.; H.K. Porter Company, Inc.; The Celotex Corporation; Raymark Industries, Inc.; Unarco Industries, Inc.; Pittsburgh Corning Corporation; Nicolet Industries, Inc.; Fibreboard Corporation; and Keene Corporation.
The action was based upon the theories of strict liability, negligence, and breach of warranty. The complaint alleged that the defendants failed to warn Copeland that exposure to asbestos products created a grave health hazard; that this failure to warn was the proximate cause of Copeland's contracting asbestosis and cancer; that, while Copeland could identify some of the products to which he was exposed, he could not identify each exposure that he sustained; that the products to which Copeland was exposed were unidentifiable as to manufacturer due to the fact that they were removed from the original containers when the exposure occurred; and that, because each exposure contributed to Copeland's injury, the doctrine of joint and several liability should be extended to each of the manufacturers through the application of the market share theory of liability that was adopted by the Supreme Court of California in Sindell v. Abbott Laboratories, 26 Cal.3d 588, 607 P.2d 924, 163 Cal. Rptr. 132, cert. denied, 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980), to deal with injuries caused by DES, a drug prescribed to pregnant women to prevent miscarriages.
Celotex filed a motion to dismiss for failure to state a cause of action, asserting that Copeland had failed to set forth sufficient ultimate facts identifying what product was manufactured by Celotex, what defect allegedly existed, and when, where, and how the accident occurred. The trial court granted the motion on the ground that the theories of enterprise liability, market share liability, alternative liability, concert of action, or any other theories of liability addressed in Sindell were not cognizable under Florida law. The market share theory of liability is the subject of the district court's Celotex decision.
The remaining manufacturers, including Armstrong Cork, subsequently filed motions for summary judgment on the ground that the action was barred by the running of the applicable statute of limitations, sections 95.031(2) and 95.11(3)(e), Florida Statutes (1981). The motions alleged that Copeland was on notice of the dangers of asbestos in the late 1960's; that he knew he had been inhaling asbestos dust during the 1960's; that he was having respiratory problems and sought medical attention in 1972; and that he had quit his job in 1975 because of his breathing problems. Further, the movants asserted that the evidence reflected that Copeland's action accrued no later than April, 1975, and, since he did not file his suit until June, 1979, the four-year statute of limitations period had run. The trial court granted the motions and dismissed the complaint with prejudice. The trial court also granted a motion for summary judgment for three of the manufacturers on the ground that the record reflected no identification of any product produced by the manufacturers. In so ruling, the trial court specifically rejected the Sindell theory of liability. These issues are the subject of the district court's Armstrong decision.
The record reflects that, in depositions, Copeland was able to specifically identify at least eleven of the defendant corporations as having supplied the asbestos products to which he had been exposed.[3] He also stated that the asbestos materials to which he had been exposed came in several different forms and were used for different purposes. Essentially all of the materials were used as insulation in boilers, refrigeration units, and ships. Copeland testified *536 that the materials were used in different capacities and, consequently, each had different physical characteristics. Virtually all of the products were in the form of "wet" cements, "cork" sheets, cloth-covered sheets, and blocks. These materials contained asbestos which was gray or off-white in color and, in all but the wet cements, the asbestos was flaky or powdery.

The Market Share Theory of Liability
The district court, in its opinion in Celotex, determined that Copeland alleged sufficient ultimate facts to be entitled to an opportunity to prove his allegations under the market share theory advanced in Sindell. The court noted that: (1) asbestosis results from cumulative exposure to asbestos dust and cancer attributable to asbestos may result from a single exposure; (2) manifestation of the diseases may not occur until many years after initial exposure; and (3) it is difficult, if not impossible, to determine which exposure is responsible for the disease. Accordingly, the district court held that under these circumstances the complaint sufficiently alleged a cumulative exposure injury as well as a cancer injury. 447 So.2d at 912-13. With regard to product identification, the district court noted that the complex nature of asbestos-related injuries made proof under traditional theories of causation extremely difficult and determined that the solution to this problem was the adoption of a modified version of the market share theory of liability.
The market share theory of liability, as expressed in Sindell, is asserted to be a modified version of the alternative liability theory. Sindell involved the drug DES, which was sold between 1941 and 1971 as a miscarriage preventative. Although the drug was manufactured and marketed by hundreds of companies, it is important to note that it was produced pursuant to a single formula. The plaintiff in Sindell, a woman who developed malignant tumors as a result of her mother's ingestion of DES, brought suit against eleven drug companies for her injuries. The complaint alleged that the companies were in the business of producing and selling the drug which was administered to the plaintiff's mother; that DES may cause certain deadly diseases which manifest themselves after ten or twelve years; that the companies knew or should have known that DES was a carcinogen with varying periods of latency; and that the companies failed to adequately test the drug and warn of potential dangers. Further, the complaint alleged that the companies were jointly liable because they acted in concert, according to express and implied agreements, and in reliance upon each other's testing and marketing methods. 607 P.2d at 926, 163 Cal. Rptr. at 133-34. Although the plaintiff knew that her injuries were caused by DES, she was unable to identify the manufacturer of the specific product that had been ingested by her mother which caused her injury. In resolving this problem, the California Supreme Court noted that the passage of time between the ingestion of DES and the manifestation of its adverse effects, coupled with the fact that the manufacturers did not themselves dispense the drug to individual patients and, consequently, did not know who was prescribed their product, made identification of the actual tortfeasor impossible. Further, the court found that only a small percentage of the manufacturers of DES had been named in the suit, thereby rendering a strict application of the alternative liability theory inequitable. Accordingly, the Sindell court, in establishing the market share theory, required the plaintiff to join the manufacturers of a "substantial" share of the DES that the mother could have taken. The court concluded that once this appropriate market had been joined, each manufacturer would be liable for a proportion of the damages equal to its share of the market, unless it could prove that it did not produce the drug that caused the injury.
The district court in the instant cause combined the market theory with the alternative theory of liability that is incorporated into section 433B(3) of the Restatement (Second) of Torts (1965). This theory of alternative liability applies when the actions of two or more tortfeasors combine to *537 create an injury and it is impossible for the injured party to show which tortfeasor actually caused the injury. Once an injury is established, alternative liability places the burden of proof of apportionment of liability upon each of the tortfeasors, rather than upon the injured party. The theory is applicable, for example, where two tortfeasors fire weapons in the direction of the victim and the victim is injured by one bullet. The victim need only prove that he was injured and that the two tortfeasors fired in his direction. He need not prove which tortfeasor fired the bullet that actually caused his injury. Rather, the burden is upon each tortfeasor to establish that he did not fire the injurious projectile and, if neither tortfeasor can do so, the tortfeasors are held jointly and severally liable. See Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948).
The district court determined that the modified market share theory would equitably apportion liability in an asbestosis case and held that
the modern rule with respect to market share liability in asbestosis case ... would more logically be reached via section 433B(2) of the Restatement (Second) of Torts (1965), which states as follows:
Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.
447 So.2d at 916. The court further held that
in an asbestosis case, each tortfeasor's liability would, just as under the section 433B(3) approach, be apportioned according to his percentage share of the total market.
Id.
Under the theory adopted by the district court, it is assumed that the cumulative exposure to products produced by more than one manufacturer resulted in the injury. When a plaintiff is unable to identify the specific manufacturer of the injurious substance, he may join all manufacturers of the products, and liability will then be apportioned according to each manufacturer's percentage share of the total market output of the injurious substance. An individual manufacturer may, however, refute liability by establishing that the plaintiff was not exposed to its product. The district court did not establish what would constitute a substantial market share and did not identify the boundaries of the relevant geographic market. It concluded that the complaint should not be dismissed for failure to identify the specific product that caused the injury.
We find that the market share theory is an inappropriate vehicle with which to apportion liability for the asbestos-related injury in this cause. Our holding is based principally upon the fact that Copeland was able to identify many of the manufacturers of the products to which he was exposed.
The market share theory of liability was developed to provide a remedy where there is an inherent inability to identify the manufacturer of the product that caused the injury. In the present case, Copeland expressly acknowledges that he "can identify several of the products he utilized." Further, during depositions he identified a majority of the petitioners as having supplied the products to which he was exposed. We fully agree with the comments of Judge Nesbitt in his dissent in Celotex that where "the plaintiff is able to identify at least one manufacturer who caused his injury, the reasons for imposing market share liability do not exist." 447 So.2d at 917. We also agree that "this is an inappropriate case in which to determine whether Sindell should be adopted in Florida." Id. at 918.
In addition, it is important to note there are inherent differences between asbestos products and the drug DES, for which the market share theory was developed, which further make the market share theory extremely difficult to apply in asbestos-injury cases. DES was produced by hundreds of companies pursuant to one formula. As *538 a result, all DES had identical physical properties and chemical compositions and, consequently, all DES prescribed to pregnant women created the same risk of harm to the women's female offspring. See Sindell; see generally Phillips, Asbestos Litigation: The Test of the Tort System, 36 Ark.L.Rev. 344 (1983); Scott, Products Liability, 1982 Ann.Surv. of Am.L. 709, 709-720 (1982); Note, Market Share Liability: An Answer to the DES Causation Problem, 94 Harv.L.Rev. 668 (1981).
Asbestos products, on the other hand, have widely divergent toxicities, with some asbestos products presenting a much greater risk of harm than others. See generally Locks, Asbestos-Related Disease Litigation: Can the Beast Be Tamed?, 28 Vill.L. Rev. 1184 (1982-83); Note, Issues in Asbestos Litigation, 34 Hastings L.J. 871, 889-95 (1983); Comment, An Examination of Recurring Issues in Asbestos Litigation, 46 Alb.L.Rev. 1307, 1325-29 (1982). This divergence is caused by a combination of factors, including: the specific type of asbestos fiber incorporated into the product; the physical properties of the product itself; and the percentage of asbestos used in the product. There are six different asbestos silicates used in industrial applications and each presents a distinct degree of toxicity in accordance with the shape and aerodynamics of the individual fibers. Further, it has been established that the geographical origin of the mineral can affect the substance's harmful effects. A product's toxicity is also related to whether the product is in the form of a solid block or a loosely packed insulating blanket and to the amount of dust a product generates. The product's form determines the ability of the asbestos fibers to become airborne and, hence, to be inhaled or ingested. The greater the product's susceptibility to produce airborne fibers, the greater the product's potential to produce disease. Finally, those products with high concentrations of asbestos fibers have corresponding high potentials for inducing asbestos-related injuries.
We note that, if we were to adopt the market theory for asbestosis cases, this Court would have to determine what constitutes a "substantial share of the market" which would have to be joined in the cause of action. See Fischer, Products Liability  Analysis of Market Share Liability, 34 Van.L.Rev. 1623 (1981). This would require a determination of what companies produced the injurious products to which a party could have been exposed, when they produced the products, and where they were marketed. Further, as noted above, because the various asbestos products have different toxicities, the courts would have to determine how to apportion liability for the differing harmful effects of the different products. The majority of courts that have addressed this issue have recognized the inherent problems in the approach and have rejected the market share theory as a means of apportioning liability for injuries caused by toxic substances. Those courts have been reluctant to eliminate the traditional tort law requirement of establishing causation and have specifically rejected the application of the market share theory in asbestosis cases. See Thompson v. Johns-Manville Sales Corp., 714 F.2d 581 (5th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984) (asbestos); Burke v. Johns-Manville Corp., No. C-1-289 (S.D. Ohio Aug. 2, 1983) (asbestos); Hannon v. Waterman Steamship Corp., 567 F. Supp. 90 (E.D.La. 1983) (asbestos); In Re Related Asbestos Cases, 543 F. Supp. 1152 (N.D.Cal. 1982) (asbestos); Tidler v. Eli Lilly & Co., 95 F.R.D. 332 (D.D.C. 1982) (DES); Morton v. Abbott Laboratories, 538 F. Supp. 593 (M.D.Fla. 1982) (DES); Starling v. Seaboard Coast Line Railroad, 533 F. Supp. 183 (S.D.Ga. 1982) (asbestos); Prelick v. Johns-Manville Corp., 531 F. Supp. 96 (W.D.Pa. 1982) (asbestos); Mizell v. Eli Lilly & Co., 526 F. Supp. 589 (D.S.C. 1981) (DES); Ryan v. Eli Lilly & Co., 514 F. Supp. 1004 (D.S.C. 1981) (DES); Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171 (1982) (DES); Zafft v. Eli Lilly & Co., 676 S.W.2d 241 (Mo. 1984) (DES). See also Pipon v. Burroughs-Wellcome Co., 532 F. Supp. 637 (D.N.J.), aff'd, 696 F.2d 984 (3d Cir.1982) (DES). See generally *539 Special Report: An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation, 36 Vand.L.Rev. 573, 620-25 (1983) (hereinafter Special Report); Comment, An Examination of Recurring Issues in Asbestos Litigation, 46 Alb.L.Rev. 1307, 1325-29 (1982); Comment, Market Share Liability for Defective Products: An Ill-Advised Remedy for the Problem of Identification, 76 Nw.U.L.Rev. 300 (1981); Comment, Market Share Theory and the Asbestos Suits: Should the Industry Bite the Dust?, 14 Stetson L.Rev. 239 (1984). But see Hardy v. Johns-Manville Sales Corp., 509 F. Supp. 1353 (E.D. Tex. 1981), rev'd on other grounds, 681 F.2d 334 (5th Cir.1982) (order allowing use of market share liability was subsequently vacated in Hardy v. Johns-Manville Sales Corp., No. M-79-145-CA (E.D.Tex. Sept. 24, 1982)); Ferrigno v. Eli Lilly & Co., 175 N.J. Super. 551, 420 A.2d 1305 (1980) (DES) (disagreed with by Namm v. Charles E. Frosst & Co., 178 N.J. Super. 19, 427 A.2d 1121 (1981)); Collins v. Eli Lilly & Co., 116 Wis.2d 166, 342 N.W.2d 37, cert. denied, ___ U.S. ___, 105 S.Ct. 107, 83 L.Ed.2d 51 (1984).
While we recognize the clearly established majority view on this issue as expressed in the above holdings, we do not find it necessary to accept or reject the market theory approach; rather, we find that, since Copeland has identified several of the named defendants as having manufactured the products that caused his injury, this case neither requires nor justifies the major policy change necessary to adopt the market share theory in Florida.

Statute of Limitations
In Armstrong the district court held the action was not barred by the statute of limitations. The court found that, in a case where the injury is a "creeping-disease," like asbestosis, the action accrues when the accumulated effects of the substance manifest themselves in a way which supplies some evidence of the causal relationship to the manufactured product. As noted by the district court, Copeland's condition "slowly deteriorated until he retired in April, 1975. At that time he was unable to work due to shortness of breath, a symptom consistent with emphysema." 447 So.2d at 925. The record reflects that Copeland was not diagnosed as having asbestosis until 1978. We agree with the district court that, under these circumstances, when the disease manifested itself was a question of fact not subject to resolution by summary judgment. See Diamond v. E.R. Squibb & Sons, Inc., 397 So.2d 671 (Fla. 1981); Overland Construction Co. v. Sirmons, 369 So.2d 572 (Fla. 1979); Brown v. Armstrong World Industries, 441 So.2d 1098 (Fla. 3d DCA 1983), review denied, 451 So.2d 847 (Fla. 1984); Vilardebo v. Keene Corp., 431 So.2d 620 (Fla. 3d DCA), appeal dismissed, 438 So.2d 831 (Fla. 1983). See also Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Karjala v. Johns-Manville Products Corp., 523 F.2d 155 (8th Cir.1975); Borel v. Fibreboard Paper Products Corp., 493 F.2d 1076 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); Nolan v. Johns-Manville Asbestos & Magnesia Materials Co., 74 Ill. App.3d 778, 30 Ill.Dec. 307, 392 N.E.2d 1352 (1979), aff'd, 85 Ill.2d 161, 52 Ill.Dec. 1, 421 N.E.2d 864 (1981); Louisville Trust Co. v. Johns-Manville Products Corp., 580 S.W.2d 497 (Ky. 1979); Harig v. Johns-Manville Products Corp., 284 Md. 70, 394 A.2d 299 (1978); Dalton v. Dow Chemical Co., 280 Minn. 147, 158 N.W.2d 580 (1968); Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434 (Mo. 1984); McKee v. Johns-Manville Corp., 94 Misc.2d 327, 404 N.Y.S.2d 814 (1978), cert. denied, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982). See generally Special Report at 641-49; Comment, Coping with the Particularized Problems of Toxic Tort Litigation, 28 Vill. L.Rev. 1298, 1314-19 (1982-83). Accordingly, we approve the reasoning of the district court of appeal on this issue.

Conclusion:
For the reasons expressed, we quash the decision of the district court in Copeland v. Celotex Corp. and approve in part and quash in part the decision in Copeland v. *540 Armstrong Cork Co. We remand these causes to the district court with directions that they be remanded to the trial court to proceed with the trial of these actions in accordance with the views expressed herein. We further direct that Copeland be given an opportunity to file an amended complaint if he so desires.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in result only.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
[2] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[3] Copeland identified asbestos products supplied by the following companies: Unarco Industries, Inc.; Johns-Manville Sales Corporation; The Celotex Corporation; Pittsburgh Corning Corporation; Owens-Corning Fiberglas Corporation; Combustion Engineering, Inc.; Eagle-Picher Industries, Inc.; Keene Corporation; Nicolet Industries, Inc.; GAF Corporation; and Armstrong World Industries, Inc.