209 N.J. Super. 242 (1986)
507 A.2d 290
HYMAN SECKULAR AND RUTH SECKULAR, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
CELOTEX; CELOTEX, AS SUCCESSOR-IN-INTEREST TO PHILIP CAREY, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 26, 1986.
Decided April 3, 1986.
*245 Before Judges KING, O'BRIEN and SCALERA.
Levinson, Conover, Axelrod, Wheaton & Grayzel, attorneys for appellants (Ronald B. Grayzel, on the brief).
Morley, Cramer, Tansey, Haggerty & Fanning, attorneys for respondent Nicolet, Inc. (Thomas M. Kelly, on the letter brief).
Chazen & Chazen, attorneys for respondent Empire Ace Insulation Mfg. Corp. (Bernard Chazen, on the letter brief).
Schwartz & Andolino, attorneys for respondent Eagle-Picher Industries, Inc. (James F. McNaboe, on the letter brief).
McCarter & English, attorneys for respondents Owens-Illinois, Inc., Celotex Corporation, Pittsburgh-Corning Corporation, H.K. Porter Company, Keene Corporation and Flintkote (Andrew T. Berry, of counsel; J. Forrest Jones, on the brief).
Respondents GAF Corporation, Todd Shipyards Corporation and Standard Insulation Company did not participate in the appeal.
The opinion of the court was delivered by KING, P.J.A.D.
Plaintiffs, Hyman Seckular,[1] and his wife, Ruth, appeal from the Law Division judge's denial of their motion to voluntarily dismiss the complaint without prejudice and from his grant of *246 defendant's motion for summary judgment. The complaint was dismissed as time-barred under Florida substantive law and its borrowing statute which the judge thought dictated that the New York statute of limitations should be applied to preclude plaintiff's suit for damages sustained as a result of exposure to asbestos. Plaintiff contends that the Law Division judge wrongfully exercised his discretion in denying his motion to voluntarily dismiss the complaint and incorrectly interpreted the applicable Florida law on the time-bar issue.
The case arises in this factual background. Plaintiff came to Brooklyn, New York from Poland in 1920. He lived in Brooklyn until 1979 when he and his wife moved to Delray Beach, Florida where they bought a condominium. Plaintiff's only exposure to asbestos occurred sometime between 1941 and 1945 when he worked as a welder at Todd Shipyards in Brooklyn.
When plaintiff moved to Florida in 1979, he registered to vote, obtained a driver's license, and worked part-time selling shoes. He began experiencing a constant cough and difficulty breathing in August 1982. He consulted five doctors in Florida but none diagnosed his condition as mesothelioma. The first doctor gave him cough syrup. After he suffered an attack in which he could not breathe, he was admitted to the hospital for tests and surgery was performed. Although not clear to us, it appears that plaintiff's right lung was removed in Florida because of a cancerous condition.
Despite the surgery, plaintiff's coughing continued. Four months after surgery, which occurred around October 1982, plaintiff consulted a Dr. Stein. He had grown weaker and was losing his appetite. Stein recommended that he see a pulmonary specialist, Dr. Falkowitz, who sent him for tests and prescribed medication for asthmatic bronchitis. After seeing Falkowitz, plaintiff came north.
Plaintiff and his wife came to live with their daughter and son-in-law in Marlboro, New Jersey during the summer of 1983. Plaintiff and his wife retained ownership of the Florida condominium *247 and hoped to return there in the winter. Plaintiff said that he could no longer live in Florida year-round because of the heat and humidity; he could not "combat the outdoors ... with half a lung." While staying with his daughter, plaintiff's condition was diagnosed as mesothelioma by Dr. Teirstein at Mount Sinai Hospital in New York City in May 1983.
The present suit was instituted in August 1983. It is unclear on this record when plaintiff died or when he moved back to Florida. The only information we have comes from his daughter's affidavit where she stated that
Shortly before my father died, my parents returned to Florida against my wishes.... My mother has decided to remain in Florida.
This case presents a rather complex choice-of-law question. New Jersey, as the forum, is asked to decide whether New York or Florida law applies to a cause of action asserted by a now-deceased Florida domiciliary who was exposed to asbestos in New York during World War II. New Jersey has no real interest in the litigation. The applicable Florida law seems unclear to us. A death action is now pending in Florida.
Defendants moved for summary judgment on time-bar grounds. Plaintiff then moved for a voluntary dismissal of his complaint without prejudice. After issue is joined, plaintiff may dismiss without prejudice only with court approval. R. 4:37-1(b). Plaintiff's counsel desired the dismissal because (1) Florida was the appropriate forum under principle of forum non conveniens, (2) New Jersey should not decide the choice-of-law issue where it had no interest in the law suit, and (3) plaintiff's surviving wife had filed a death action in Florida and a dismissal would avoid multiple suits. The judge found the plaintiff's action time-barred, reasoning that New Jersey would apply Florida substantive law and in the circumstances Florida courts in turn would borrow New York's statute of limitations because plaintiff's diagnosis was made there.
Plaintiff argues that, under Florida law, his cause of action arose in Florida in August 1982 when his injury became manifest. *248 Fla. Stat. § 95.031(2) (1982). As such, plaintiff contends that Florida's four-year statute of limitations, Fla. Stat. § 95.11 (1982), governs and permitted this suit filed in August 1983 to proceed. Defendants counter that Florida substantive law provides that, in cases of asbestosis-related injuries, the cause of action arises in the jurisdiction in which the diagnosis is made. Since plaintiff's mesothelioma was diagnosed in New York, defendants contend that the Florida courts would borrow the New York statute of limitations, Fla. Stat. § 95.10 (1979), and under the New York statute of limitations, N.Y.Civ.Prac.Law, § 214 (McKinney 1984), plaintiff's action would be barred since it was not filed within three years from the last exposure to the deleterious substance. See Steinhardt v. Johns-Manville Corp., 54 N.Y.2d 1008, 446 N.Y.S.2d 244, 430 N.E.2d 1297, 1298-1299 (Ct.App. 1981), amended 55 N.Y.2d 802, 447 N.Y.S.2d 437, 432 N.E.2d 139 (Ct.App. 1981), cert. den. 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982) (statute of limitations begins to run upon inhalation of deleterious substance). One defendant also argues on this appeal that New York substantive law should apply to plaintiff's cause of action because there were more significant contacts with New York than with Florida.
New Jersey has abandoned the traditional rule of lex loci delecti in choice-of-law tort cases in favor of a governmental interest approach to substantive choice-of-law questions. Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. 643, 648-649 (App.Div. 1984). A governmental interest approach is also used to determine whether New Jersey should apply its own statute of limitations or that of a foreign state. Heavner v. Uniroyal, Inc., 63 N.J. 130, 140-141 (1973); Pine v. Eli Lilly & Co., 201 N.J. Super. 186, 190-191 (App.Div. 1985). Both "governmental interest" tests are similar. Pine v. Eli Lilly, 201 N.J. Super. at 191.
... This approach requires a two-step analysis in resolving conflicts questions: the court determines first the governmental policies evidenced by the laws of each related jurisdiction and second the factual contacts of the parties with each *249 related jurisdiction. [Deemer v. Silk City Textile Mach. Co., 193 N.J. Super. at 649].
The forum state, in a conflicts situation, must decide whether to apply its own substantive law or that of a sister state. In this case, the forum, New Jersey, has no interest in applying its own law and no party contends that New Jersey substantive law should apply. Rather, the "governmental interest" approach which New Jersey employs in substantive conflicts questions in tort cases must somehow be used to decide whether Florida or New York substantive law should apply. Our concern in this case is why New Jersey should decide any aspect of this case in light of plaintiff's request for a voluntary dismissal. In order to decide which state's substantive law should apply, the forum would have to delve into the various governmental policies behind both New York and Florida substantive law on torts. If both states would apply New York's statute of limitations under their substantive law, then this case would present a false conflict or no conflict at all. We conclude, however, that Florida substantive law is not clear on whether that state's courts would conclude that plaintiff's cause of action arose in New York, the place of the diagnosis.
Another problem with the governmental interest balance in this case, is that Florida apparently continues to adhere to fairly rigid rules in conflicts cases. See Meehan v. Celotex Corp., 466 So.2d 1100, 1101 (Fla. Dist. Ct. App. 1985) (substantive law of forum is applied to determine where the cause of action arose). Once Florida applies its own law to determine where the cause of action arose, i.e., where the last act necessary to establish liability occurred, Florida will borrow the other state's statute of limitations without regard to any governmental interest test. Colon v. Celotex Corp., 465 So.2d 1332, 1333 (Fla. Dist. Ct. App. 1985). Conversely, New York has abandoned the traditional rule of lex loci delicti in favor of an interest-balancing test similar to that in New Jersey. Schultz v. Boy Scouts of America Inc., 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94-98, 480 N.E.2d 679 (Ct.App. 1985).
*250 If conflicts doctrine is to foster some uniformity and preclude forum shopping, we fail to see why New Jersey should engage in any extended governmental interest analysis as to Florida and New York substantive law where the courts of Florida apparently would not favor their own interests for a resident of that state. In other words, it is the forum's conflicts principles which cause the original complexity here since New Jersey appears in theory to accord more weight to a sister state's governmental interest than would that state.
In any event, we do not think we should engage in any extended discussion of the governmental interest balance as it concerns the substantive law of New York and Florida. This test developed not merely to weigh the factual contacts and apply the law of that jurisdiction, but to determine each state's governmental policies and then to determine the factual contacts which would be relevant to them. Pine v. Eli Lilly, 201 N.J. Super. at 192. Since Florida does not recognize this balancing test, its governmental policies must be inferred. Basically, the policies at issue would be Florida's apparent recognition of the discovery rule in statute of limitations cases compared to New York's rigid, yet uniform and easily applied, focus on the date of exposure with no time for an equitable discovery rule. If that rule was designed to provide an easily applied "bright-line" for New York courts, the policy decision would be inapplicable in a New Jersey court where no such policy obtains. Apparently, New York's policy would be lightly weighed where the suit is not being litigated in its courts. Pine v. Eli Lilly, 201 N.J. Super. at 194.
The factual contacts in this case show that the now-deceased plaintiff was a Florida domiciliary when his symptoms first became manifest and that he returned to Florida just before he died. Although not commented upon by any party, there seems to be an issue as to whether plaintiff was ever really a New Jersey resident.[2] The factual contacts with New *251 York are that plaintiff's exposure occurred in New York and the diagnosis of the asbestos-related condition also occurred there. Since New Jersey conflicts cases recognize residency as a weighty factor in determining whose law should be applied, e.g., Pine v. Eli Lilly, 201 N.J. Super. at 193, we think that Florida substantive law should probably apply in this case in light of New Jersey's concern with a party's domicile. The conflicts cases in New Jersey, where residence is a determining factor, are cases where the injured party is domiciled in New Jersey, suit is brought here, and the injured party seeks application of this forum's substantive law. See Mellk v. Sarahson, 49 N.J. 226 (1967). In the case before us, the governmental interest balance and the factor of plaintiff's residence point not to the application of the substantive law of the forum, but to the application of the substantive law of plaintiff's true residence, Florida, as opposed to the substantive law of the place of exposure, New York.
A review of pertinent Florida law discloses uncertainty on what a Florida court might decide on the statute of limitations issue. There are three pertinent cases: Celotex Corp. v. Copeland, 471 So.2d 533 (Fla.Sup.Ct. 1985); Colon v. Celotex Corp., *252 465 So.2d 1332; Meehan v. Celotex Corp., 466 So. 1100 (en banc split decision).
In Meehan, the decedent was exposed to asbestos in New York in 1945 and later moved to Florida in 1969. His mesothelioma was diagnosed in Florida in 1977 and he died in 1978. Suit was instituted in Florida in 1979. The Meehan court first looked to Florida's borrowing statute which stated that the statute of limitations of another jurisdiction should be applied where "the cause of action arose in another state ..." Ibid. Since the borrowing statute was considered procedural, the determination of where the cause of action arose would be made in accordance with Florida law. According to the court, a cause of action accrues under Florida law when a plaintiff knows or should have known of the existence of his cause of action or the invasion of his legal rights. Because the record did not demonstrate that the cause of action arose in New York or arose any time before the diagnosis in Florida, the court remanded the matter to the trial judge for a determination of the discovery issue. The net result of the Meehan decision was that the trial judge's ruling that, as a matter of law, plaintiff's action had arisen in New York was erroneous.
In Colon another appellate court was asked to apply the Meehan opinion in a case where a Florida resident commenced an action in Florida for asbestosis which he incurred while employed by a Florida installer of asbestos products but where the diagnosis was made in Tennessee. The Colon court concluded that Florida was required to borrow the shorter Tennessee statute of limitations because the cause of action was discovered in Tennessee. The court apparently focused on the diagnosis of the condition in Tennessee. However, in Colon there was a factual dispute presented which, if resolved favorably to plaintiff, would have made plaintiff's suit timely, even under the shorter Tennessee statute of limitations. Therefore, the Florida court did not time-bar an action by one of its residents as a matter of law.
*253 In Celotex Corp. v. Copeland, a Florida Supreme Court decision, the Court ruled that an action accrues in a "creeping disease" situation where "the accumulated effects of the substance manifest themselves in a way which supplies some evidence of the causal relationship to the manufactured product." 471 So.2d at 539. The Florida Supreme Court concluded that the symptoms of shortness of breath developed in April 1975 but that the diagnosis of asbestosis was not made until 1978. Under these circumstances, the court concluded that when the disease manifested itself for purposes of the accrual of the action was a question of fact not subject to resolution by summary judgment.
We conclude that the place of the diagnosis is not necessarily the determinative fact as a matter of Florida law. While Copeland was a case which interpreted an accrual under the Florida statute of limitations, the Meehan court noted that Florida courts have never made a distinction between the accrual of an action under the state's statute of limitations and when a cause of action arose for purposes of the borrowing statute. Meehan, 466 So.2d at 1102. Therefore, we do not think that Florida would definitely state that plaintiff's cause of action arose in New York because that was the place of the diagnosis. Rather, Copeland read in conjunction with Meehan suggests that even in a conflicts situation the place where the cause of action arose in an asbestos-related injury may be a question of fact. This could be especially true in a situation where the diagnosis is made in a jurisdiction other than where the symptoms first became manifest. Of importance to note, none of these three cases automatically precluded an action by a Florida resident as time-barred by borrowing another state's statute of limitations. Rather, each case recognized that the date when the cause of action arose was a disputed question of fact.
Unfortunately, the trial judge did not have the benefit of the Florida Supreme Court's decision in Copeland and none of *254 the parties raised an issue of a factual dispute which would preclude the New Jersey court from deciding as a matter of law whether Florida would borrow New York's statute of limitations and dismiss the action as time-barred. In light of the dispute concerning whether plaintiff's cause of action arose in Florida, where he first manifested symptoms of the asbestos related condition, or arose in New York, when the mesothelioma was first diagnosed, we decline to decide authoritatively that Florida would borrow New York's statute of limitations and bar this suit. In this situation we think the wiser path is to defer to the Florida courts on this issue as a matter of comity. For this reason, we allow a dismissal without prejudice. This claim can be asserted in Florida in conjunction with the pending death action and the Florida courts can decide which law is applicable in a forum with some governmental interest in the controversy.
We perceive no basic injustice in granting a voluntary dismissal without prejudice on leave of court, R. 4:37-1(a), and deferring to the Florida courts. The Florida death action must be defended anyway. Cf. Moss Estate, Inc. v. Metal & Thermit Corp., 73 N.J. Super. 56, 66 (App.Div. 1962) (dismissal denied when suit in advanced stage); see also Union Carbide Corp. v. Litton Prec. Prods. Inc., 94 N.J. Super. 315 (Ch.Div. 1967). The now-deceased plaintiff's original choice of a New Jersey forum was apparently motivated by good faith in light of his need for cancer therapy, his treatment base originating from his daughter's home here, and his problem with the southern climate in the summer season. If not for these fortuitous circumstances, Florida surely would have been the original and sole forum.
The complaint will be dismissed without prejudice. The grant of summary judgment adverse to plaintiff is reversed.
NOTES
[1] Actually, plaintiff Hyman Seckular died after the complaint was filed but his personal representative was never substituted as a party plaintiff. We will refer to plaintiff in the singular in this opinion.
[2] The pertinent facts are stated in appellant's brief.

Although Hyman Seckular resided in Florida at the time his disease manifested itself, finding Florida's climate unbearable, he subsequently moved to New Jersey to his daughter, Susan Klau's home to undergo treatment and to avail himself of family care.
Plaintiff's condition (mesothelioma) was diagnosed during an admission at Mt. Sinai Hospital in New York City, New York. Plaintiff instituted a cause of action for his asbestos-related disease in New Jersey Superior Court while he was residing in New Jersey and intending to remain here.
Plaintiff eventually terminated his medical treatment and returned to Florida. The Seckular and Klau families believed that decedent's widow would return to New Jersey to live rather than live alone but she has chosen to remain in Florida permanently.
Since plaintiff's death in Florida, plaintiff's widow has secured an appointment as Executrix of her late husband's estate and has filed a wrongful death action in Florida. This wrongful death action is filed against the same defendants and makes the same allegations.