466 So.2d 1100 (1985)
Carmella MEEHAN, As Personal Representative of the Estate and Heirs of Charles Meehan, Deceased, Appellant,
v.
The CELOTEX Corporation, a Delaware Corporation, Eagle-Picher Industries, Inc., and Ohio Corporation, GAF Corporation, a Delaware Corporation, Johns-Manville Sales Corporation a Delaware Corporation, Owens-Illinois, Inc., an Ohio Corporation, and H.K. Porter Company, Inc., Appellees.
No. 82-122.
District Court of Appeal of Florida, Third District.
February 5, 1985.
On Rehearing February 5, 1985.
Rehearing and Certification Denied April 9, 1985.
*1101 Frederick M. Baron & Associates and Jane N. Saginaw and Brian D. Weinstein, Dallas, Tex., Robles & Robles, Miami, for appellant.
Shackleford, Farrior, Stallings & Evans and Clark Jordan-Holmes and Charles P. Schropp, Tampa, Thomson, Zeder, Bohrer, Werth, Adorno & Razook and Jon W. Zeder and Rana M. Gorzeck; Wolpe & Leibowitz, Steven R. Berger, Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern and Susan J. Cole and Michael K. McLemore, Marks, Gray, Conroy & Gibbs and Tracey I. Arpen, Jr., Jacksonville, for appellees.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
On Rehearing En Banc February 5, 1985.

REVISED OPINION
DANIEL S. PEARSON, Judge.
The panel opinion issued in this cause on November 15, 1983, is withdrawn, and the following opinion is substituted therefor.
The appellant, Carmella Meehan, is the personal representative of the estate of Charles Meehan, her late husband. Reciting a now all too familiar scenario, Mrs. Meehan charged that the defendants caused her husband's death when products manufactured by them exposed him to the pernicious effects of asbestos dust.
Between 1942 and 1945, Charles worked at the Brooklyn Navy Yard where, it is alleged, he was exposed to the defendants' asbestos products. He and Carmella moved to Florida in 1969. Eight years later, Charles' Florida physician first diagnosed Charles as having asbestosis and mesothelioma, diseases caused by the inhalation of asbestos. Charles died in 1978, and a year later this suit was filed in Florida. The trial court entered summary judgment for the defendants on the stated ground that:
"It is undisputed that the Decedent, CHARLES FRANCIS MEEHAN, was exposed to asbestos products only at the Brooklyn Navy Yard, Brooklyn, New York, from 1942 through 1945. Pursuant to the provisions of Section 95.10 of the Florida Statutes this Court applies the appropriate statute of limitations under the laws of the State of New York and finds that this action is barred by those statutes of limitations [sic]."
This appeal followed. We reverse.
Section 95.10, Florida Statutes (1979), referred to in the trial court's judgment, is commonly known as a borrowing statute. It provides:
"When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." (emphasis supplied).
It is clear that the borrowing statute is triggered only upon a finding that the cause of action arose in another state. Because Florida's borrowing statute is considered to be purely procedural, Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. 1972); Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla. 4th DCA 1983), rev. denied 446 So.2d 99 (Fla. 1984), the determination of where a "cause of action arose" is made in accordance with the law of the forum state, (here Florida), Colhoun, 265 So.2d 18; Pledger, 432 So.2d 1323, see Farris & Co. v. William Schluderberg, T.J. Kurdle Co., 141 Fla. 462, 193 So. 429 (1940), rather than New York, the state apparently deemed by the trial court to *1102 have the most significant relationship to the occurrence and to the parties.[1]
Under the thus applicable Florida law, a cause of action in tort "arises in the jurisdiction where the last act necessary to establish liability occurred." Colhoun v. Greyhound Lines, Inc., 265 So.2d at 21. Although it is plausibly argued by the defendants that we must distinguish between where a cause of action arises (said by them to be the place where the claim originates) and when a cause of action accrues (said by them to be the time when the statute of limitations begins to run) and that discovery of the existence of a cause of action is relevant only to the latter inquiry, our examination of Florida case law discloses that no such distinction has ever been made and that, to the contrary, the terms "arise" and "arose" have consistently been used interchangeably with the terms "accrue" and "accrued".[2]See, e.g., Universal Engineering Corp. v. Perez, 451 So.2d 463 (Fla. 1984); Colhoun v. Greyhound Lines, Inc., 265 So.2d 18; Brown v. Case, 80 Fla. 703, 86 So. 684 (1920). Cf. Georgia-Pacific Corp. v. Squires Development Corp., 387 So.2d 986 (Fla. 4th DCA 1980) (splitting causes of action); Gaboury v. Flagler Hospital, Inc., 316 So.2d 642 (Fla. 4th DCA 1975) (venue case). Indeed, in the face of this case law, assumed to be known by the legislature, see Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla. 1984); Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157 (Fla. 3d DCA 1984), the legislature, in 1975, revised Chapter 95, including Section 95.10, and not only made no effort to distinguish between these terms, but instead reinforced their equation by defining accrue as occurring "when the last element constituting the cause of action occurs", § 95.031(1), Fla. Stat. (1975), a definition which is substantially the same as the definition of arise ("where the last act necessary to establish liability occurred") found in Colhoun. Thus, to ascertain the meaning of the phrase "where the last act necessary to establish liability occurred"  that is, where the cause of action arose  we may properly look to the meaning of its equivalent, "when the last element constituting the cause of action occurs"  that is, when the cause of action accrued. It being clear that "the accrual [of a cause of action] must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights", Creviston v. General Motors Corp., 225 So.2d 331, 334 (Fla. 1969); see Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157; Lund v. Cook, 354 So.2d 940 (Fla. 1st DCA), cert. denied 360 So.2d 1247 (Fla. 1978), a cause of action in tort arises when the plaintiff knew or should have known of the existence of the cause of action or the invasion of his legal rights.[3],[4]
*1103 Therefore, insofar as Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA 1983) holds that for purposes of Florida's borrowing statute a cause of action arises at the time of exposure to a deleterious substance without regard to whether the plaintiff knew or should have known of the injury, that holding is overruled.
Because the record before us does not conclusively demonstrate that the cause of action arose in New York or, for that matter, arose anytime prior to 1977 when Meehan's disease was first diagnosed in Florida, we hold that the trial court erred in finding as a matter of law that Meehan's cause of action arose in New York rather than in Florida. See Brown v. Armstrong World Industries, Inc., 441 So.2d 1098 (Fla. 3d DCA 1983). Of course, if, in subsequent proceedings, there is evidence adduced to show that Meehan knew or should have known through the exercise of due diligence of the existence of his cause of action more than four years prior to the institution of this suit, our opinion will not prevent the fact-finder from concluding that this action is limitations-barred under Section 95.11(3)(a), Florida Statutes (1979).[5]
Reversed and remanded for further proceedings.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

OPINION ON REHEARING EN BANC
PER CURIAM.
The court has reheard this matter en banc because of its determination that the panel opinion conflicts with the decision of this court in Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA), pet. for review denied, 438 So.2d 833 (Fla. 1983). Four members of the court (the panel members and Judge Jorgenson) have voted to adhere to the panel decision; four members of the court (Chief Judge Schwartz and Judges Barkdull, Baskin and Ferguson) would vacate the panel decision and follow Marano *1104 for the reasons set forth in Chief Judge Schwartz's attached dissent; and Judge Hubbart would deny en banc consideration of the matter for the reasons expressed in his dissent. Therefore, there being a 4-4 tie on the merits of the controversy, the panel's decision stands as the decision of the court. See Fla.R.App.P. 9.331(a).
HUBBART, Judge (dissenting).
I must respectfully dissent to the court's decision to rehear this case en banc; I also dissent to the court's decision to declare the revised panel opinion the decision of this court on the merits. I would deny the appellees' motion for rehearing en banc and reinstate the original panel opinion filed in this cause on November 15, 1983. In my view, the original panel opinion created no conflict or lack of uniformity with Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA), pet. for review denied, 438 So.2d 833 (Fla. 1983), as urged by the appellees herein, sufficient to invoke our en banc jurisdiction under Fla.R.App.P. 9.331; accordingly, the original panel opinion should stand as the decision of this court.
The November 15, 1983 original panel opinion  which the court voted to rehear en banc over my dissent  narrowly, and I think correctly, reads the Marano decision as follows:
"We read Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA 1983), as standing for the narrow proposition that where the allegations of the plaintiff's pleadings conclusively show that his cause of action arose in another state, the trial court properly borrows the foreign state's statute of limitations to bar the action. If Marano is not so read, then the case is a departure from the rules laid down in Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 [(Fla. 1972)], and City of Miami v. Brooks, 70 So.2d 306 [(Fla. 1954)]."
Nov. 15, 1983 panel opinion, slip opinion at 4 n. 5.
As thus read  and I recognize that the appellees protest this reading  there is admittedly no conflict or lack of uniformity between Marano and the panel's result herein. This being so, the appellees' motion for rehearing en banc should be denied as we have no jurisdiction to entertain this cause as an en banc rehearing under Fla.R. App.P. 9.331(a) ("En banc hearings or rehearings shall not be ordered unless necessary to maintain uniformity in the court's decisions.").[1] I therefore have no occasion to address the merits of the controversy and express no views thereon.
My colleagues, it would appear, are evenly split on the merits of the cause by a tie vote of 4-4 which necessarily means that the panel opinion of November 15, 1983 must stand as the decision of this court. The law is well-settled:
"The en banc decision shall be by a majority of the active judges actually participating and voting on the case. In the event of a tie vote, the panel decision of the district court shall stand as the decision of the court."
Fla.R.App.P. 9.331(a).
Subsequent to the above en banc decision, however, the three-judge panel has  without authority, I think  withdrawn its November 15, 1983 opinion upon which the en banc rehearing was held and has filed in its stead a revised panel opinion. The court en banc declares this revised panel opinion the opinion of the court in this cause in view of the court's tie vote on the merits. I entirely disagree. I think the original panel opinion of November 15, 1983, upon which the rehearing en banc was held, is the only valid opinion of the court in this cause; the revised opinion, in my view, is a nullity.
*1105 It seems elementary to me that after a district court of appeal decides to rehear a case en banc and thereafter adheres to that decision  as we have done in the instant case  the panel is powerless to withdraw their original decision and file in its stead a revised panel opinion. In these circumstances, I think the case is an en banc cause for the court to decide on an en banc basis; the panel, in my view, has no authority to reach back and alter its original panel opinion, as the case is no longer the panel's to decide. This being so, the revised panel opinion herein is of no force and effect.
Moreover, I note that the revised panel opinion alters substantially its treatment of the Marano case by deleting the abovequoted portion of the original panel opinion and substituting instead the following:
"Therefore, insofar as Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA 1983) holds that for purposes of Florida's borrowing statute a cause of action arises at the time of exposure to a deleterious substance without regard to whether the plaintiff knew or should have known of the injury, that holding is overruled."

revised panel opinion, slip opinion at 5 (emphasis added).
Plainly, a three-judge panel has no authority to overrule a prior panel opinion of this court; the Florida Supreme Court has specifically so held. In re Rule 9.331, 416 So.2d 1127, 1128 (Fla. 1982).[2] The revised panel opinion must therefore be read not to overrule Marano but to "overrule" an improper reading of Marano which is all the panel purports to do. To the extent that something more drastic was meant by the above language, the revised opinion is plainly in conflict with a Florida Supreme Court decision.
For the above-stated reasons, I would deny the appellees' motion for a rehearing en banc and reinstate the original November 15, 1983 panel opinion filed in this cause.
SCHWARTZ, Chief Judge (dissenting).
The court's decision has resuscitated an action which has been barred for over thirty *1106 years in New York, where the defendants' allegedly wrongful acts took place, where Mr. Meehan was exposed to their harmful effect and where he continued to live for nearly twenty years after his claim had already been terminated under the laws of his state. It seems no less than obvious to me that, interpreted in the light of its evident purpose, 49 Fla.Jur.2d Statutes § 154 (1984), the borrowing statute[1] precludes the maintenance of that same cause in Florida. The statutory purpose was stated as follows in the initial supreme court decision on the subject, Brown v. Case, 80 Fla. 703, 86 So. 684 (1920):
It is clear that the Legislature intended to give a debtor against whom a cause of action accrued in another state or territory, or in a foreign country, the benefit of statutes of limitations of those jurisdictions if they were shorter than that of this state.
86 So. at 685. Looking at the issue, as is thus required, from the point of view of the defendant "debtors," it is clear that this very action accrued against them in New York no later than 1945. And I cannot agree with the court that there is any controlling legal basis for nonetheless denying them "the benefit" of the shorter New York statute of limitations.
It is true, as was said in Colhoun v. Greyhound Lines, Inc., 265 So.2d 18, 21 (Fla. 1972), that a tort action "`arises in the jurisdiction where the last act necessary to establish liability occurred.' Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 U.Fla.L.Rev. 33, 47 (1962)." But neither that statement of the general rule nor any other Florida case resolves the present, apparently unique, problem in which the law of Florida and that of the competing jurisdiction differ as to what the "last act" is. In making that choice of law determination, see Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), I believe that  to vindicate the very basis of section 95.10  we must look to the law of the place where the wrongful act occurred and, under that law, the limitations period was simultaneously initiated. Nor is there a precedential impediment to the adoption of such a rule, which is a variation of the one well-and-fairly stated in footnote 1 of Judge Pearson's panel opinion.[2] None of the Florida cases cited involve such a dichotomy in the substantive rules upon which the limitation question depends; none therefore turn on the choice to be made between those jurisdictions; and none are therefore contrary to this approach. Indeed, Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla. 4th DCA 1983), pet. for review denied, 446 So.2d 99 (Fla. 1984), in its emphasis upon the importance placed by the borrowing statute upon the law of the state where the wrong occurred and whose limitations statute foreclosed the action, if anything, supports this conclusion.
This result is also supported by what I think is the meaningful distinction, as outlined although not adopted by the court, between the terms "arise" and "arose," on the one hand, and "accrue" and "accrued" on the other. Thus, it is significant that in its recent expression on this very subject, Penthouse North Association, Inc. v. Lombardi, 461 So.2d 1350 (Fla. 1984), the Supreme Court specifically employed the latter rather than the former expressions:
A statute of limitation does not commence to run until the cause of action *1107 accrues. A cause of action does not accrue until someone has been damaged by the acts complained of.
461 So.2d at 1352. This language plainly permits the conclusion that a cause of action "arises" under section 95.10 at some time  that is, when the tortious act takes place  prior to when it "accrues" for limitations purposes at the point that damages are sustained or discovered. The fact that, as the panel says, these terms have been used interchangeably in the past means nothing because, again, no Florida court has been concerned with the possible distinction between the terms in dealing with an issue such as this. But it is only the legal context which gives meaning to a neutral or otherwise unclear legal term. See Barrington v. State, 145 Fla. 61, 199 So. 320, 323 (1940); Flagship National Bank of Miami v. King, 418 So.2d 275, 278 n. 6 (Fla. 3d DCA 1982); Satz v. Blankenship, 407 So.2d 396 (Fla. 4th DCA 1981), pet. for review denied, 413 So.2d 877 (Fla. 1982).
In short, by mechanically, but wholly inappropriately, transposing statutory expressions from settings in which their use was immaterial to another, vastly different one, the court has succeeded in applying a Florida statute of limitations concept, dealing with the accrual of a cause of action, so as to breathe life into a foreign cause of action which has long been moribund under the statute of limitations of the state where the tort was committed. But section 95.10 makes the New York, not the Florida, statute of limitations determinative.
Unlike Judge Hubbart, I believe the court's holding is directly contrary to Marano v. Celotex Corp., 433 So.2d 592 (Fla. 3d DCA 1983), pet. for review denied, 438 So.2d 833 (Fla. 1983). Unlike the panel, I believe that Marano was correctly decided in accordance with the intent and purpose of the borrowing statute. Although we may all share a fundamental disagreement with the law of New York on this issue, the legislature has, I think, quite clearly told us that we must follow that law on these facts. I would obey its command and our judicial obligation and affirm the judgment below.
BARKDULL, BASKIN and FERGUSON, JJ., concur.

ON MOTION FOR CLARIFICATION AND CERTIFICATION
PER CURIAM.
The per curiam opinion on rehearing en banc states that "the panel's decision stands as the decision of the court," but does not expressly state whether it is referring to the original panel decision filed November 15, 1983, or to the revised opinion filed February 5, 1985. Upon the appellees' motion, we clarify that it was intended that the panel's revised opinion filed February 5, 1985, stand as the decision of the en banc court.
We certify the following question of great public importance to the Florida Supreme Court:
May an action which could not be maintained by reason of limitations in the state in which the allegedly wrongful conduct occurred because that state does not recognize postponement of accrual until discovery, nonetheless be maintained in Florida because Florida law postpones accrual until discovery?
In all other respects, the motions for rehearing and to certify are denied.
SCHWARTZ, C.J., and HENDRY, BARKDULL, NESBITT, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ., concur.
HUBBART, Judge (concurring in part; dissenting in part).
I concur in the court's decision to certify to the Florida Supreme Court the question stated in the court's clarification opinion. I dissent, however, from the court's refusal to certify for Supreme Court review the second question requested by the appellees in their motion filed herein, to wit:
Does a district court of appeal three-judge panel have the power to withdraw its original opinion and enter a revised opinion after the case has been accepted *1108 for en banc determination, and in the revised opinion overrule another three-judge panel opinion[?]
I would certify this question as well.
BASKIN, J., concurs.
NOTES
[1] Admittedly, there is respectable support for the contrary view that an integral part of the substance of any cause of action is the amount of time for which it has life and that, therefore, a borrowing statute, the aim of which is to give a cause of action no greater life in the forum jurisdiction than it would have in the state whose substantive law is to be applied, should be construed according to the law of the latter state. See Martin v. Juluis Dierck Equipment Co., 52 A.D.2d 463, 384 N.Y.S.2d 479 (N.Y. App. Div. 1976); E. Scoles and P. Hay, Conflict of Laws (1982); R. Weintraub, Commentary on the Conflict of Laws (2d ed. 1980). However, at least one Florida court has specifically rejected the application of the significant relationship test to Section 95.10. Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla. 4th DCA 1983). Cf. Proprietors Insurance Co. v. Valsecchi, 435 So.2d 290 (Fla. 3d DCA 1983) (rejecting the "interest" approach to conflict of law choices.)
[2] Courts in other jurisdictions have held that the terms "arose" and "accrued" have the same meaning. See, e.g., Renfroe v. Eli Lilly & Co., 541 F. Supp. 805 (E.D.Mo.), affirmed, 686 F.2d 642 (8th Cir.1982); Bruner v. Martin, 76 Kan. 862, 93 P. 165 (1907). But see Klotz v. Angle, 220 N.Y. 347, 116 N.E. 24 (1917); Doughty v. Funk, 15 Okla. 643, 84 P. 484 (1905).
[3] In contrast, under New York law a cause of action in tort arises at the point of exposure to the deleterious substance, "even though the injured party may be ignorant of the existence of the wrong or injury," Schmidt v. Merchants Despatch Transportation, Co., 270 N.Y. 287, 200 N.E. 824, 827 (N.Y. 1936). This court-made rule, first announced in Schmidt, has been consistently reaffirmed by the New York courts. In 1981 the New York legislature amended its statute of limitations to make the exposure rule inapplicable to Agent Orange cases, in which the statute of limitations is to run from the date of discovery or constructive discovery. N.Y.Civ. Prac.Law § 214-b (1983). In Steinhardt v. Johns-Manville Corp., 430 N.E.2d 1297, 54 N.Y.2d 1008, 446 N.Y.S.2d 244 (1981), cert denied 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982), the New York Court of Appeals, acknowledging the amendment, declined to judicially extend the discovery rule to deleterious substances other than Agent Orange, paradoxically stating "[w]e believe it to be inappropriate and injudicious to intrude into an area best suited for legislative scrutiny." 430 N.E.2d at 1299, 54 N.Y.2d at 1012, 446 N.Y.S.2d at 246. At oral argument on rehearing en banc this court was informed that the New York legislature was in the process of amending its statute of limitations again so as to bring other deleterious substances under the discovery rule. Our research reveals no such change as of the date of this opinion.
[4] Assuming, arguendo, that venue cases are apposite to the instant case, we do not agree with the defendants that A-1 Truck Service, Inc. v. Kivenas, 371 So.2d 495 (Fla. 1st DCA 1979), or Gaboury v. Flagler Hospital, Inc., 316 So.2d 642 (Fla. 4th DCA 1975), compel the conclusion that a cause of action arises where the negligent act occurs absent cognizance of the negligent act. Indeed, as Gaboury itself says:

"In determining the proper forum in which to bring suit under the general statute fixing venue where the cause of action `arose', or `accrued', the `injury occurred', et cetera, the differences are often of importance, but generally within the meaning of statutes of this kind, a cause of action is said to arise at the place where the act creating the right to bring an action occurred, and when a tort is complete in a particular county, the cause of action is deemed to have accrued there so as to fix venue, notwithstanding that the plaintiff may have suffered damages, and even his greatest damage, in another county." 316 So.2d at 644 (emphasis supplied; emphasis in original omitted).
"[A] tort is complete" only when the plaintiff knew or should have known of his right to a cause of action or an invasion of his legal right. City of Miami v. Brooks, 70 So.2d 306 (Fla. 1954).
[5] If the evidence were to show that Meehan knew or should have known through the exercise of due diligence of the existence of his cause of action prior to 1969 when he moved from New York, the action would clearly be barred under the statutes of limitations of both Florida and New York, see N.Y.Civ.Prac.Law § 214(5) (McKinney 1983) (an action for a personal injury must be commenced within three years), and, although technically the borrowing statute would be triggered, there would be no difference in the result.
[1] I should hasten to add that the motion for rehearing en banc in this case was filed prior to January 1, 1985, so that the amendment to Fla. R.App.P. 9.331(a), expanding our en banc jurisdiction to include cases of "exceptional importance," was not in effect. See The Florida Bar Re: Rules of Appellate Procedure, 463 So.2d 1114 (Fla. 1984) (amendments effective January 1, 1985). In any event, I do not consider this case to be one of "exceptional importance" even if the amendment to the above-stated rule is considered applicable to this rehearing proceeding.
[2] historical discussion leads to the question raised by the chief judges of the district courts, whether one three-judge panel can expressly overrule or recede from a prior decision of a three-judge panel of the same court on the same point of law. Under our appellate structural scheme, each three-judge panel of a district court of appeal should not consider itself an independent court unto itself, with no responsibility to the district court as a whole. The view that one district court panel is independent of other panels on the same court could possibly be a proper constitutional interpretation if our constitution provided that district courts were merely intermediate courts, with this Court, as the state's highest court, having full discretionary jurisdiction to review all intermediate court decisions. This was not, however, the type of appellate structural scheme adopted by the electorate. In fact, the suggestion that each three-judge panel may rule indiscriminately without regard to previous decisions of the same court is totally inconsistent with the philosophy of a strong district court of appeal which possesses the responsibility to set the law within its district.
Although we agree that, to carry out the purpose behind our new appellate structure, a three-judge panel of a district court should not overrule or recede from a prior panel's ruling on an identical point of the law, we cannot accept the chief judges' suggestion that we should prohibit that action by court rule. Without addressing possible constitutional problems, we find that a strict rule of procedure would be unworkable and inappropriate under the circumstances. We recognize that in many instances factual circumstances are different and cases may be distinguishable on that basis. In addition, the issues raised and argued in a prior case may not be the same as issues raised and argued in the case under review.
We have full confidence that the district court of appeal judges, with a full understanding of our new appellate structural scheme, will endeavor to carry out their responsibility to make the law consistent within their district in accordance with that intent. We would expect that, in most instances, a three-judge panel confronted with precedent with which it disagrees will suggest an en banc hearing. As an alternative, the district court panel could, of course, certify the issue to this Court for resolution. Consistency of law within a district is essential to avoid unnecessary and costly litigation. We conclude that the district court judges, through their opinions, will adopt principles to ensure this result. (footnote omitted)."
416 So.2d at 1128.
[1] Section 95.10, Florida Statutes (1979), provides:

When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.
[2] Admittedly, there is respectable support for the contrary view that an integral part of the substance of any cause of action is the amount of time for which it has life and that, therefore, a borrowing statute, the aim of which is to give a cause of action no greater life in the forum jurisdiction than it would have in the state whose substantive law is to be applied, should be construed according to the law of the latter state. See Martin v. Juluis Dierck Equipment Co., 52 A.D.2d 463, 384 N.Y.S.2d 479 (N.Y. App. Div. 1976); E. Scoles and P. Hay, Conflict of Laws (1982); R. Weintraub, Commentary on the Conflict of Laws (2d ed. 1980).