523 So.2d 141 (1988)
CELOTEX CORP., Petitioner,
v.
Carmella MEEHAN, Etc., Respondent.
CELOTEX CORP., et al., Petitioners,
v.
Jean NANCE, etc., Respondent.
CELOTEX CORP., Petitioner,
v.
Louis Key COLON, et ux., Respondents.
Nos. 66937, 66938 and 66939.
Supreme Court of Florida.
March 17, 1988.
*142 Thomas C. MacDonald, Jr., Charles P. Schropp and Raymond T. Elligett, Jr. of Shackleford, Farrior, Stallings and Evans, and James W. Kynes, Tampa, for petitioner in No. 66937.
Jane N. Saginaw of Baron & Budd, Dallas, Tex., and Louis S. Robles, Miami, for respondent in No. 66937.
Thomas C. MacDonald, Jr., Charles P. Schropp and Raymond T. Elligett, Jr. of Shackleford, Farrior, Stallings & Evans, Tampa, James W. Kynes, Tampa, James E. Tribble and Diane H. Tutt of Blackwell, Walker, Fascell & Hoehl, Miami, Susan J. Cole of Blaire & Cole, Coral Gables, Erik J. Blomqvist, Jr. of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Miami, Tracey I. Arpen, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, C. Bryant Boydstun, Jr. of Lyle & Skipper, St. Petersburg, *143 Tracy Howard of the Law Office of Harold C. Knecht, Coral Gables, Brian S. Keif of the Law Office of Karl L. Santone, Steven R. Berger, Carlos E. Casuso of Casuso & Trompeter, South Miami, Gilbert Haddad of Haddad, Josephs & Jack, Coral Gables, John Liebman, Orlando, and Thomas J. Schulte of Lee, Schulte, Murphy & Coe, Miami, for petitioners in No. 66938.
Freidin & Hirsch, P.A., and Sharon L. Wolfe of Cooper, Wolfe & Bolotin, P.A., Miami, for respondent in No. 66938.
Donald M. Middlebrooks, Thomas R. Julin and Norman Davis of Steel, Hector and Davis, Miami, amicus curiae, for Nat. Gypsum Co. in No. 66938.
Thomas C. MacDonald, Jr., Charles P. Schropp and Raymond T. Elligett, Jr. of Schackleford, Farrior, Stallings & Evans, and James W. Kynes, Tampa, for petitioner in No. 66939.
Jane N. Saginaw of Baron & Budd, Dallas, Tex., Louis S. Robles, Miami, and Michael Y. Rowland of Rowland & Rowland, Knoxville, Tenn., for respondents in No. 66939.
OVERTON, Justice.
This is a petition to review Meehan v. Celotex Corp., 466 So.2d 1100 (Fla. 3d DCA 1985), consolidated with petitions to review Nance v. Johns-Manville Sales Corp., 466 So.2d 1113 (Fla. 3d DCA 1985), and Colon v. Celotex Corp., 465 So.2d 1332 (Fla. 3d DCA 1985). These cases involve the application of section 95.10, Florida Statutes (1979), Florida's borrowing statute, to asbestosis claims. In Meehan and Nance, the Third District Court of Appeal refused to apply Florida's borrowing statute. The court held that causes of action which arose in New York and Virginia, because of exposure to asbestos in those states, could be brought in Florida because the injury was discovered in Florida and, therefore, was governed by this state's statute of limitations. In Colon, the Third District applied the borrowing statute as construed in Meehan, and held that an action in which the plaintiff was exposed to asbestos in Florida was governed by Tennessee's one-year statute of limitations because the injury was discovered, by medical diagnosis, in Tennessee.
In Meehan and Nance, the Third District Court of Appeal certified the following question as one of great public importance:
May an action which could not be maintained by reason of limitations in the state in which the allegedly wrongful conduct occurred because that state does not recognize postponement of accrual until discovery, nonetheless be maintained in Florida because Florida postpones accrual until discovery?
466 So.2d at 1107. We have jurisdiction over all three cases. See art. V, § 3(b)(4) and (3), Fla. Const. We answer the question in the negative.
The Florida borrowing statute, section 95.10, Florida Statutes (1979), reads as follows:
When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.
The purpose of the statute is to discourage "forum shopping" and the filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose.
After the district court of appeal's decisions, and while this cause was pending, we considered the application of our borrowing statute in Bates v. Cook, Inc., 509 So.2d 1112 (Fla. 1987). In Bates, we addressed the following question:
For the purpose of applying Florida's limitation of actions "borrowing" statute, Fla. Stat. Ann. § 95.10 (West 1982), is the determination ... to be made solely with reference to the state in which the "last act necessary to establish liability" occurred, or with reference to the "significant relationships" that the respective states have to the cause of action?
Id. at 1113 (citations omitted). We stated that we were answering that question "as if it related to any action arising in tort." Id. In applying our borrowing statute in *144 that decision, we approved for use in this type of case the newly revised version of the American Law Institute Restatement (Second) of Conflict of Laws § 142 (1971), which reads:
An action will be maintained if it is not barred by the statute of limitations of the forum unless the action would be barred in some other state which, with respect to the issue of limitations, has a more significant relationship to the parties and the occurrence.
Bates, 509 So.2d at 1114 (citing 54 U.S.L.W. 2597 (May 27, 1986)). We also approved the commentary which stated that statutes of limitations should be decided like any other choice-of-law issue and recognized the trend away from labeling statutes of limitations as "procedural." We concluded:
[J]ust as in the case of other issues of substantive law, the significant relationships test should be used to decide conflicts of law questions concerning the statute of limitations. Our ruling does not do violence to Florida's borrowing statute. We simply hold that the significant relationships test should be employed to decide in which state the cause of action "arose." The borrowing statute will only come into play if it is determined that the cause of action arose in another state.
509 So.2d at 1114-15.
In view of our Bates decision, the application of section 95.10 is now clearly dependent on whether there are significant relationships which establish that the cause of action arose in another state. The criteria for determining whether significant relationship exist are set forth in the Restatement (Second) of Conflict of Laws § 145(2) (1971), which provides, in part:
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
See Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980).
We will address the application of section 95.10 to the Meehan, Nance, and Colon cases separately, because each has distinguishing aspects relating to the certified question, as well as differences in the application of the significant relationships test. The Meehan case produced the primary opinion and the principles adopted in that case were utilized in deciding both Nance and Colon. Meehan has been further complicated by legislation adopted in New York while Meehan was pending in this Court.

Meehan
During World War II, from 1942 to 1944, Charles Meehan worked as a pipefitter at the Brooklyn Navy Yard, where he was exposed to asbestos products. Meehan and his wife, Carmella, did not move to Florida until 1969. Eight years later, Meehan was diagnosed as having asbestosis and mesothelioma, diseases caused by the inhalation of asbestos fibers. As a result of these afflictions, Meehan died in 1978. Carmella Meehan, as personal representative of the estate of her late husband, filed this suit in 1979. The trial court entered final summary judgment for Celotex in 1981 on grounds that Meehan's claim was barred by the New York statute of limitations as borrowed under section 95.10, Florida Statutes (1979). A revised panel decision reversed the summary judgment. On rehearing en banc, the revised panel decision stood as the final decision of the court by virtue of an en banc four-four tie on the merits, with Chief Judge Schwartz and Judge Hubbart writing dissenting opinions.
The panel decision determined that under Florida law a borrowing statute is purely procedural and the determination of whether a cause of action has arisen is made in accordance with the law of this state. Meehan, 466 So.2d at 1101 (citing Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. *145 1972); Farris & Co. v. William Schluderberg, T.J. Kurdle Co., 141 Fla. 462, 193 So. 429 (1940); Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla. 4th DCA 1983), review denied, 446 So.2d 99 (Fla. 1984)). In construing section 95.10, the district court reasoned that a cause of action in tort arises in the jurisdiction where the last act necessary to establish liability occurred, and since the accrual of a cause of action must coincide with the aggrieved party's discovery of the injury, a cause of action in tort arises only when the plaintiff knew or should have known of the existence of the cause of action. Meehan, 466 So.2d at 1102. The district court concluded that the trial court erred in finding as a matter of law that Meehan's cause of action arose in New York, where he was exposed to asbestos, rather than in Florida, where he discovered the injury. Furthermore, the district court held that Meehan could bring the cause of action in Florida unless he "knew or should have known through the exercise of due diligence," that his cause of action existed more than four years prior to filing the action in this state. Id. at 1103. In so holding, the district court overruled its decision in Marano v. Celotex, 433 So.2d 592 (Fla. 3d DCA), review denied, 438 So.2d 833 (Fla. 1983).
Chief Judge Schwartz dissented, stating: "The court's decision has resuscitated an action which has been barred for over thirty years in New York, where the defendants' allegedly wrongful acts took place." 466 So.2d at 1105-06. He reasoned that "to vindicate the very basis of section 95.10  we must look to the law of the place where the wrongful act occurred and, under that law, the limitations period was simultaneously initiated." Id. at 1106. Judge Schwartz argued that this interpretation carried out the purpose of a borrowing statute "`which is to give a cause of action no greater life in the forum jurisdiction than it would have in the state whose substantive law is to be applied.'" Id. n. 2 (quoting J. Pearson's revised majority opinion, 466 So.2d 1102 n. 1).
Under Florida's discovery standard, the cause of action does not accrue, for limitations purposes, until the injured party discovers or has a "duty to discover the act constituting an invasion of his legal rights." Creviston v. General Motors Corp., 225 So.2d 331, 334 (Fla. 1969). Consequently, a medical diagnosis which revealed that the party was suffering from asbestos-related diseases would be the event that triggered Florida's statute of limitations unless it was shown that the party should have been aware of a cause of action before that time. In Florida, the statute does not begin to run until such a discovery occurs. As will be explained, that was not the law in the state of New York at the time this action was initiated, nor is it the law in the state of Virginia, each of which has a different method for determining when a statute of limitations begins to run.
Under New York law in effect at the time this claim was filed and the trial court and district court ruled on the matter, Meehan's cause of action arose and accrued in 1944, the final year of Meehan's employment in the Brooklyn shipyards. Further, the New York statute of limitations expired in 1947, and consequently Meehan's suit in New York had been barred for thirty-nine years. Unlike Florida, New York had expressly rejected the discovery standard. Steinhardt v. Johns-Manville Corp., 54 N.Y.2d 1008, 430 N.E.2d 1297, 446 N.Y.S.2d 244, amendment granted, 55 N.Y.2d 802, 432 N.E.2d 139, 447 N.Y.S.2d 437 (1981), appeal dismissed, cert. denied, sub nom. Rosenberg v. Johns-Manville Sales Corp., 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982). Under New York law when the district court ruled, a cause of action arose and accrued regardless of Meehan's knowledge or discovery of the injury in the state of New York in 1944. Schmidt v. Merchants Despatch Transportation Co., 270 N.Y. 287, 200 N.E. 824 (1936).
Given the state of the law, we must reject the holding of the majority opinion of the district court of appeal. Its reasoning effectively allows a former New York resident to resurrect a cause of action in Florida barred in New York for over thirty-nine years (Meehan), but denies a Florida resident *146 the opportunity to bring his cause of action in Florida, where the wrongful act occurred, because the injury was discovered in Tennessee (Colon). In view of Bates, it is the significant relationship with the states involved that is the critical factor in determining the application of section 95.10. Where the injury is discovered is only one factor to be considered, not the determining factor.
The legislative purpose of section 95.10 is to not allow a longer statute of limitations in Florida than is provided in the jurisdiction where the cause of action arose. To determine the applicability of the statute, we must apply the significant relationship criteria to Meehan. In our opinion, the criteria clearly show that New York has the significant relationship with Meehan. Meehan was a resident of New York at the time of his exposure; the employer was domiciled in New York; the entire asbestos exposure was at one place of employment in New York; and Meehan continued to reside in New York for twenty-five years after his exposure to asbestos. These circumstances establish that the place where the conduct causing the injury occurred, Meehan's domicile, and the domicile of Meehan's employer at the time of the conduct causing the injury were all in the state of New York. The only significant contact with Florida is that the injury manifested itself and was discovered in this state. See Restatement (Second) of Conflict of Laws § 145(2) (1971). We find these circumstances establish a significant relationship with New York and, consequently, under the law of New York at the time of the district court of appeal decision, section 95.10 barred the action in Florida.
That should dispose of this matter. However, while this appeal was pending in this Court, the New York Legislature enacted a statute allowing a one-year period for claimants previously barred to bring actions for the recovery of damages for latent effects of exposure to deleterious substances, including asbestos. The new New York law, effective July 30, 1986, provided, in part:
[E]very action for personal injury ... caused by the latent effects of exposure to ... asbestos . .. which is barred as of the effective date of this act or which was dismissed prior to the effective date of this act solely because the applicable period of limitations has or had expired is hereby revived and an action thereon may be commenced provided such action is commenced within one year from the effective date of this act.

1986 N.Y. Laws, ch. 682, § 4 (emphasis added). Meehan has not advised this Court whether an action was filed by him in New York during the one-year savings period, which has now expired.
In supplemental briefs which we permitted, Meehan now contends that this change of law in New York "revives" any cause of action which may have expired in New York, and therefore makes our borrowing statute inapplicable. He also contends that a recent New York decision, Piccirelli v. Johns-Manville Sales Corp., 128 A.D.2d 762, 513 N.Y.S.2d 469 (1987), holding that a cause of action pending in a New York court would not need to be refiled in New York in order to satisfy the requirements of the statutory one-year window provision also applies in this circumstance. Clearly, this action was barred at the time the claim was filed and decided by the lower courts of this state; however, we find the action has now been revived by the newly enacted New York statute and New York case law. We agree with Meehan that we must follow the law in effect at the time of our decision and allow the revival of this cause of action in Florida based on the New York statutory window period. As the law now stands, this cause of action is no longer barred in New York. It may proceed, but, since the significant relationships are with the state of New York, New York law must be applied, and, if the New York statute is declared unconstitutional or Piccirelli is overruled during the pendency of this case, New York law will control and bar the action.[*]

*147 Nance

Nance was exposed to asbestos while working in the Norfolk shipyards in Virginia between 1940 and 1945. In May, 1976, while living in Florida, a doctor diagnosed Mr. Nance as having asbestosis and mesothelioma. As a result of that diagnosis, Nance filed a personal injury action in April, 1980. Following Nance's death later that year, the personal representative of his estate was substituted as a party plaintiff and filed an amended complaint for wrongful death. The trial court entered summary judgment for the defendants based on the Virginia statute of limitations as applied by virtue of section 95.10. The appeal was heard en banc with the rehearing in Meehan v. Celotex Corp., 466 So.2d 1100 (Fla. 3d DCA 1985). Relying on the revised Meehan panel opinion, the district court reversed the summary judgment and remanded the cause for reconsideration under its Meehan decision because the record did not establish whether the last act occurred in Florida or Virginia.
The Virginia statute of limitations provides a two-year limitation period for bringing a cause of action. Virginia does not follow a "discovery standard." Virginia's two-year limitation period begins to run from the "time plaintiff was hurt," which is different from the law of either New York or Florida. In Virginia, the time the plaintiff was hurt "is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." See Locke v. Johns-Manville Corp., 221 Va. 951, 959, 275 S.E.2d 900, 905 (1981). In Virginia, the statute of limitations began to run when the cancer first occurred as established by medical testimony, rather than when the cancer was diagnosed. The limited record in Nance appears to establish that the significant relationships were with the State of Virginia, with the exception of the diagnosis of asbestosis. If the only relationship with Florida is the diagnosis, then section 95.10 bars Nance's cause of action in this state. Because of the limited record, we do not reach that conclusion and remand for a proper application of the significant-relationships test.
Nance also contends that, regardless of the status of the personal injury claim, the wrongful death action was an independent cause of action brought within two years of Mr. Nance's death. The district court correctly rejected this argument, and we agree that a wrongful death action is derivative of the injured person's right, while living, to recover for personal injury. Variety Children's Hospital v. Perkins, 445 So.2d 1010 (Fla. 1983).

Colon
The majority opinion of the Third District Court of Appeal would permit Meehan and Nance, who were exposed to asbestos in other states, to bring their causes of action in Florida under Florida's statute of limitations. On the other hand, the Third District's decision would not allow Louis Colon, a Florida resident who was exposed to asbestos in Florida, to bring his cause of action in Florida, and would require him to comply with Tennessee's one-year statute of limitations.
Colon worked in Florida for twenty-three years as an installer and dismantler of asbestos products manufactured by Celotex. On June 25, 1979, Mr. Colon visited a doctor in Tennessee who diagnosed his bronchial problems as asbestosis. As a result, Colon filed this suit on June 26, 1980, in Florida. The trial court entered a summary judgment in favor of Celotex based on Tennessee's one-year statute of limitations. The Third District Court of Appeal held that "in light of Meehan, Florida is required to borrow the Tennessee limiting statute because the cause of action was discovered while plaintiff was in Tennessee." Colon, 465 So.2d at 1333. The district court remanded, however, for further evidence concerning the date that would *148 begin the Tennessee statute of limitations period.
As the district court noted, this case presents the "other side of the coin" to the issue presented in Meehan and Nance. Here, a Florida resident, who was exposed to asbestos in Florida, may be barred from recovery because of Tennessee's statute of limitations. We hold that Florida's borrowing statute does not apply. Mr. Colon was employed in Florida, was exposed to asbestos in Florida, and has been a Florida resident from the time of that exposure to the present day. Florida, under these circumstances, clearly has significant relationships to this action. The fact that Colon traveled to Tennessee, where a doctor diagnosed his disease, does not change the fact that his injury arose in Florida. The district court of appeal held that an injury's diagnosis and discovery in another state binds the injured party to the foreign state's statute of limitations. We find that is not the intent and purpose of section 95.10. If we accepted the district court's analysis of section 95.10, a potential plaintiff suffering from a latent disease would always be required to comply with the statute of limitations period in the state where he or she received medical diagnosis of the injury. In other words, the foreign state's limitation period would be applied without regard to the significant relationships test. We further find the phrase "when the cause of action arose in another state" in section 95.10 precludes the application of the statute in these circumstances because the significant relationships with Florida have been clearly established. See Bates. Colon's suit was filed in 1980 and comes well within Florida's four-year statute of limitations. Consequently, the suit must be allowed to proceed.
For the reasons expressed, we quash the district court's opinion in Meehan with directions to remand to the trial court for further proceedings in accordance with this opinion; we quash the district court's opinion in Nance except as to the wrongful death issue, which we approve, and remand with directions for further proceedings to apply the significant relationships test in accordance with the principles expressed in this opinion; and we quash the district court's opinion in Colon with directions to remand to the trial court for further proceedings in accordance with the views expressed in this opinion.
It is so ordered.
McDONALD, C.J., and EHRLICH and SHAW, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.
BARKETT, Justice, concurring in part, dissenting in part.
The essential holding in Bates, which I agree should be applied here, is: the state "where the cause of action arose" is deemed to be the state that has the most significant relationship to the parties and to the action. Consequently, the only issue to be resolved is what state has the most significant relationship to the cause of action and the parties in each of the three cases.[1]
In my view, the following is the correct resolution of the case. The significant relationship test must be applied in its totality. In the Meehan case, there clearly are two states, Florida and New York, with significant contacts to the parties and the action. The relationship of each of these states to the action should be examined and analyzed fully. First, we must distinguish between the place of injury and the place of exposure. Second, we should at least note that other parts of the test are or are not applicable. Third, because we do not have enough information to determine all aspects of the test, I believe it should be remanded. To exemplify these points, I note that:
(1) The majority's application of the Restatement test focuses almost exclusively on the place of exposure, apparently finding insignificant the place where the injury *149 occurred or manifested. This approach, particularly in the context of a limitations issue, ignores established Florida law. This Court has long recognized the distinction between exposure and legal "injury" in occupational disease cases; that critical distinction is, in fact, the theoretical underpinning of our own discovery rule. As this Court stated thirty years ago in Seaboard Air Line Railroad Company v. Ford:
Generally, in actions for personal injuries resulting from the wrongful act or negligence of another, the cause of action accrues and the statute begins to run from the time when the injury was first inflicted, and not from the time when the full extent of the damages sustained has been ascertained. The rule of Urie and similar cases dealing with limitations of actions for occupational diseases was developed as an exception to the general rule because of the fact that such diseases may exist unrecognized for a long time and under a judicial determination that the legislature could not have "intended such consequences to attach to blameless ignorance." Urie v. Thompson, supra, 337 U.S. 163 [69 S.Ct. 1018, 93 L.Ed. 1282 (1949)]. The United States Supreme Court said in the Urie case that "`the afflicted employee can be held to be "injured" only when the accumulated effects of the deleterious substance manifest themselves, * * *'" In City of Miami v. Brooks, supra, 70 So.2d 306 (Fla. 1954), we adopted the theory of the Urie case and applied it in a nonoccupational disease case where there was no visible traumatic injury at the time of the negligent act nor other circumstance by which plaintiff could have "been put on notice of his right to a cause of action * * *" at that time. And it must be held, under those decisions, that until an occupational disease has manifested itself, there has been no "injury" to start the running of the statute.

92 So.2d 160, 164 (Fla. 1956) (emphasis added, citations omitted).
By focusing on the time and place of exposure, the majority completely ignores the unique features of occupational diseases, such as the asbestos-related diseases, which develop after long incubation periods. In most personal injury cases, the fact of injury is easily discernible. However, in cases involving latent injury, where the effects of exposure to the disease-causing product do not become evident for twenty to twenty-five years after initial contact, the time and place of injury necessarily is obscure. In such cases, courts must decide whether an "injury" occurred at the time of exposure or at some later time related to the disease's inception or progress. Furthermore, with asbestos-related diseases in particular, courts have recognized that not everyone who inhales asbestos fibers develops an asbestos-related disease.[2] The asbestos may lay dormant *150 for years before any disease process begins, and the future time when it may develop is unpredictable. See Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1214 (6th Cir.1980), clarified, 657 F.2d 814 (6th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); Eagle-Picher Industries, Inc. v. Cox, 481 So.2d 517, 522 (Fla. 3d DCA 1985), review denied, 492 So.2d 1331 (Fla. 1986); Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 660 n. 4, 464 A.2d 1020, 1023 n. 4 (1983); Locke v. Johns-Manville Corp., 221 Va. 951, 958, 275 S.E.2d 900, 905 (1981).
In determining when an injury from asbestos exposure should be deemed to occur, courts have employed three different rules: the discovery rule, the exposure rule, and the medical evidence rule. The discovery rule is the prevailing standard in all but a few jurisdictions. The exposure rule, i.e., that legal injury occurs upon exposure, is clearly a minority view, with New York one of the few states that continues to adhere to it. See Note, Preserving Causes of Action in Latent Disease Cases: The Locke v. Johns-Manville Corp. Date-of-the-Injury Accrual Rule, 68 Va.L.Rev. 615, 629 & n. 97 (1982); Special Project, An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation, 36 Vand.L. Rev. 573, 641-49 (1983).
Under the medical evidence rule, the injury is deemed to occur upon the onset of the disease sometime between exposure and discovery. Locke. In fashioning that rule, the Locke court found that the injury, mesothelioma in that case, did not occur upon exposure: "Simply put, legally and medically there was no injury upon inhalation of defendants' asbestos fibers." 221 Va. at 958, 275 S.E.2d at 905. The court based its conclusion on uncontradicted medical testimony that many persons exposed to asbestos particles never develop mesothelioma and that the cancerous tumor does not begin upon exposure but some time later:
[T]here was no injury at the time of the wrongful act. A disease like this cancer must first exist before it is capable of causing injury. To hold otherwise would result in the inequity of barring the mesothelioma plaintiff's cause of action before he sustains injury.
Id. at 959, 275 S.E.2d at 906.
The same considerations have compelled numerous courts to hold that claims for asbestosis and cancer arising from the same exposure to asbestos are separate and distinct so that they need not be joined in a single action. Jackson v. Johns-Manville Sales Corp., 727 F.2d 506, 520 (5th Cir.1984)(a plaintiff stricken with asbestosis but not cancer cannot recover based on assertion that his condition later may cause cancer), cert. denied, ___ U.S. ___, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); Wilson v. Johns-Manville Sales Corp., 684 F.2d 111, 115-17 (D.C. Cir.1982) (manifestation of any asbestos-related disease does not trigger running of statute of limitations on all later-manifested diseases engendered by the same asbestos exposure); Fearson v. Johns-Manville Sales Corp., 525 F. Supp. 671 (D.D.C. 1981); Eagle-Picher, 481 So.2d at 522 (only 15% of those persons who contract asbestosis later develop mesothelioma); Pierce, 296 Md. at 660 n. 4, 464 A.2d at 1023 n. 4 (1983) (expert testimony that individual who has been diagnosed with asbestosis will not inevitably contract either mesothelioma or lung cancer); Lavelle v. Owens-Corning Fiberglass Corp., 30 Ohio Misc.2d 11, 507 N.E.2d 476 (1987)(a plaintiff can never prove causation of a disease which has not yet manifested itself).
All of these decisions are premised on the fact that cancer is a separate disease from asbestosis and that evidence cannot be adduced that asbestosis inevitably will lead to cancer. Indeed, as pointed out earlier, all exposure will not lead inevitably to asbestosis. See G. Peters & B. Peters, Sourcebook on Asbestos Diseases, Medical, Legal & Engineering Aspects, Vol. I, *151 B18-20 (1980). At early stages, a plaintiff could at most speculate that he or she might be injured and obviously could not establish proof of the "reasonably certain" damages necessary to establish a compensable injury. Wilson, 684 F.2d at 119-20.
The foregoing analysis suggests that in cases involving asbestos-related diseases, the place of exposure may not be the state with the most significant relationship to the claim. Consequently, I believe that under the Restatement test, a court must evaluate all aspects of the "injury"  exposure, discoverability, and manifestation  to determine overall what state has the most significant relationship to the claim.
(2) The majority opinion does not take into account the criteria for determining the most significant relationship listed in the Restatement (Second), § 146(6). As this Court noted in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), under the Restatement test, the contacts listed in § 145(2) should be evaluated with an eye to the following factors, important choice-of-law considerations in all areas of the law:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Id. at 1001 n. 1 (quoting Restatement (Second) of Conflict of Laws § 6 (1971)).
Several of these criteria are applicable here. For example, Florida clearly has an interest in protecting its residents from the hazards of occupational disease and allowing resident victims a right of action in such cases, based not upon the time of exposure but upon the victim's reasonable discovery of the disease. In light of New York's recent legislation, New York has the identical interest and policy. In fact, the recent legislation indicates that New York now favors the plaintiff's right to sue in such actions over the defendant's right not to be subjected to such suits even when the incubation period of the disease is great. Thus, there is no countervailing policy consideration to the forum's state's interest in allowing this action to proceed.
(3) In Meehan, the plaintiff had been a Florida resident for eight years before the disease manifested. All of the witnesses and testimony on damages will be in Florida. Thus, on the damages issues, the relationship between the parties clearly is centered in Florida.
(4) The third factor under the Restatement, "domicile, residence, nationality, place of incorporation and place of business of the parties," should be examined both at the time of the plaintiff's exposure and at the time of the litigation since both may be important in evaluating which state has the most significant relationship to the action and the parties. Although I have been unable to discern from the briefs exactly where Celotex's principal place of business was at the time of exposure or where it is at the present time, Celotex clearly is a Florida resident at present. At the time of Meehan's exposure, Celotex apparently had no connection with the disease-causing asbestos at all. The asbestos was manufactured by Philip Carey, an Ohio corporation whose successor Celotex subsequently purchased. In terms of this factor, it is difficult to see what interest New York has in the action at all.
(5) Following from point four above, we do not know for purposes of the strict liability claim where the conduct causing the injury occurred, i.e., we do not know where the product was manufactured. It does appear, however, that the asbestos was being manufactured and marketed by an Ohio corporation, not a New York or Florida corporation.
In view of the fact that the district and trial courts applied the obsolete lex loci rule to construe our borrowing statute, and *152 because I do not believe the facts were developed sufficiently for a thorough application of the significant relationship test in either Meehan or Nance, I would remand both of these cases to the trial court.
NOTES
[*] We note that the law of Florida would only allow an expansion of a statute of limitations period when the change is made before the cause of action is barred by the prior statutory limitation period. Corbett v. General Engineering & Machinery Co., 160 Fla. 879, 37 So.2d 161 (1948).
[1] The certified question, as phrased, is no longer apropos since the "state in which the allegedly wrongful conduct occurred" may or may not be the state with the most significant relationship to the cause.
[2] The primary asbestos-related diseases are asbestosis, mesothelioma, and lung cancer. Although all result from exposure to asbestos, their etiology is very different. When asbestos particles enter the lungs, fibrous lung tissue surrounds the particles. When the encapsulation process diminishes pulmonary function and makes breathing difficult, the disease of asbestosis is said to be present. There is usually a latent period of 10 to 25 years between initial exposure and apparent effect. How many years of breathing asbestos it takes for asbestos to occur varies from person to person. Some workers exposed for 40 years or more will not become diseased at all whereas others exposed for shorter periods of time at lower concentrations will contract asbestosis. If the asbestosis is not seriously advanced, an individual may continue to lead a relatively normal life. Although the disease is progressive once it begins and is incurable, it is not cancerous. Mesothelioma, on the other hand, is a rare form of cancer, invariably fatal, which occurs in the mesothelial cells which line the chest wall and surround the organs of the chest cavity. The latency period may be from 20 to 40 years or more. The development of asbestos-related lung cancer is similar to that of mesothelioma. Although the correlation between asbestos and lung cancer is not established, it appears that inhalation of asbestos increases the risk of lung cancer in persons who smoke. The disease generally occurs 15 to 35 years after exposure and is incurable. See Insurance Co. of North America v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1214 & n. 1 (6th Cir.1980), clarified, 657 F.2d 814 (6th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); Pierce v. Johns-Manville Sales Corp., 296 Md. 656, 464 A.2d 1020, 1022 n. 1 (Md. 1983); Special Project, An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation, 36 Vand.L. Rev. 573, 579 (1983); G. Peters & B. Peters, Sourcebook on Asbestos Diseases, Medical, Legal & Engineering Aspects, Vol. I, B18-20 (1980).