Gul **JAISINGHANI**, Plaintiff,

v.

**CAPITAL CITIES/ABC, INC.,**
**et al., Defendant.**

**No. 94–1927–CIV.**

United States District Court,
S.D. Florida.

March 22, 1997.

David Thomas Azrin, Miami, FL, David Y. Atlas, Frankfurt Garbus Klein & Selz, New York City, for Gul Jaisinghani.

Thomas Richard Julin, Steel, Hector & Davis, P.A., Miami, FL, for Capital Cities/ABC, Inc., The Kansas City Star Co., Bill Dalton, Datatimes Corp.

Thomas Dearing, LeBoeuf Lamb Greene & MacRae, L.L.P., Jacksonville, FL, for Prodigy Services Co.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE

NESBITT, District Judge.

This cause comes before the Court upon Defendants Capital Cities/ABC, Inc., The Kansas City Star Company, Bill Dalton, and DataTimes Corp.'s (the "Capital Cities Defendants") Motion for Summary Judgment, filed November 28, 1995 (DE # 125) and Defendant Prodigy Services Corp.'s Motion for Summary Judgment, filed November 28, 1995 (DE # 129). While each Motion for Summary Judgment alleges many grounds for relief[1], the Court will limit itself to a discussion of the threshold issue of the statute of limitations for purposes of this Order.

There is no dispute that the suit was brought one year and three hundred and sixty four days after the limitations period had begun to run. Defendants argue that California's one-year statute of limitations applies, barring all of Plaintiff's claims and necessitating dismissal of the entire case. See Cal.Code.Civ. Proc. 340(3). Plaintiff disagrees, contending that Florida's two-year statute of limitations applies, allowing his claims to proceed. See Fl.Stat. § 95.11(4)(g). The Court heard oral argument on this issue on January 13, 1997 at which time the parties agreed that the question of whether the statute of limitations had run is a threshold issue of law for the Court to decide prior to trial.

### I. FACTUAL BACKGROUND

On September 20, 1992, Defendant Kansas City Star Company, a newspaper publisher, published a news report entitled "VFW donations: Who benefits? Fund-raiser takes 90% of the money given for veterans." The report included seven separate articles that examined the many charitable activities of the Veterans of Foreign Wars ("VFW"). The lead article focused on Plaintiff, Gul Jaisinghani, a private fundraiser who raised $27 million for VFW state departments in five years in eleven states from Florida to California. The main thesis of the article was that Plaintiff's organization kept 90% of all contributions for its expenses and profits.

Plaintiff, who is a citizen of India with residences in both Florida and California, filed his Complaint alleging diversity jurisdiction on September 19, 1994. The Complaint includes a single count for defamation against all defendants. Plaintiff alleges that the article contains several false statements. As defendants he has named Bill Dalton, the article's author, the Kansas City Star Company and its parent corporation Capital Cities/ABC, DataTimes, an on-line computer service that carries the Kansas City Star, and Prodigy, another on-line computer service on which a summarized version of the article repeating the allegedly false statements to other subscribers was posted.

### II. DISCUSSION

In Florida, defamation suits must be brought within two years of the publication

---

1. These grounds are: (1) That California's one-year statute of limitations bars the action against all defendants; (2) the statements sued upon are constitutionally privileged; (3) Plaintiff cannot show substantial falsity; (4) the statements sued upon are protected by qualified judicial and public records privileges; (5) Plaintiff cannot show that Capital Cities/ABC published the statements sued upon; and (6) Plaintiff failed to provide DataTimes and Prodigy with presuit notice required by Florida law and cannot show that DataTimes and Prodigy published the statements sued upon.

of the defamatory statements. Fl.Stat § 95.11(4)(g). Florida, however, has a borrowing statute, which provides that "[w]hen the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state." Fl. Stat. § 95.10. The purpose of the borrowing statute is to prevent forum shopping. *Madera v. Hall,* 717 F.Supp. 812, 815 (S.D.Fla. 1989), *vacated on different grounds,* 916 F.2d 1510 (11th Cir.1990); *Celotex Corp. v. Meehan,* 523 So.2d 141, 143 (Fla.1988). So, if the cause of action arose in another state whose statute of limitations would bar the claims, Florida courts will "borrow" the other state's statute of limitations, barring the action. *Celotex Corp.,* 523 So.2d at 143. Thus, the first inquiry of the a district court is to determine where the cause of action arose according to Florida law. *Madera,* 717 F.Supp. at 815.

■ Florida has adopted the "significant relationship" test to determine where the cause of action arose. *Celotex Corp.,* 523 So.2d at 144; *Bates v. Cook, Inc.,* 509 So.2d 1112, 1115 (Fla.1987). Under this test, the cause of action arises in the state with the most significant relationship to the parties and the tortious act or occurrence. To determine which state has the most significant relationship to the case, Florida follows the approach outlined in the Restatement (second) of Conflicts of Laws § 145(2) and weighs the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Celotex,* 523 So.2d at 144.

Plaintiff and Defendants contend that this issue is one of pure law solely to be determined by the Court. *Digioia v. H. Koch & Sons,* 944 F.2d 809, 811 (11th Cir.1991); *Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1118 (11th Cir.1990); and *American Family Life Assurance Co. v. U.S. Fire Co.,* 885 F.2d 826, 830 (11th Cir.1989). Thus, this Court will determine in which direction the significant relationship factors weigh, based on the facts presented to the Court, and determine whether Florida or California bears the most significant relationship to this case.

The first factor, location of the injury, is indecisive; that is, the injury occurred in both California and Florida as well as other states in which the article was published. Normally, in libel cases such as this, the location of the injury is held to occur wherever the periodical is circulated. *Stepanian v. Addis,* 782 F.2d 902, 903 (11th Cir.1986) [2]; *Madera v. Hall,* 717 F.Supp. 812, 815 (S.D.Fla.1989), *vacated on different grounds,* 916 F.2d 1510 (11th Cir.1990). Here, the offending newspaper was circulated in both California and Florida, as well as other states not relevant. Thus, the injury could be held to have occurred in both states.

Plaintiff attempts to argue, citing cases such as *Madera,* that the place where the most damage has been alleged to occur is the place where the most injury was done to Plaintiff's reputation and should bear the most significant relationship to the cause of action. In this case, that proposition is not entirely clear. While Plaintiff alleges and provides extensive evidence that their ability to acquire fundraising contracts in Florida has been damaged, Plaintiff does not show how this damage is unique to Florida. Plaintiff's business is a national business with offices and contracts throughout the United States. Plaintiff was actively lobbying for contracts in many states and each one of these contracts had the potential to be damaged by the allegations in this article. Additionally, Plaintiff has not shown that these business opportunities were pending at the time of the publication of the article. Even though Plaintiff had no active contracts in California as well, he still maintained a base

---

2. *Stepanian* was decided before *Celotex Corp. v. Meehan,* 523 So.2d 141, 143 (Fla.1988) and thus did not utilize the significant relationship test. The Court's analysis was brief and appeared to rely primarily on where the allegedly libelous statements were published to determine whether Florida's borrowing statute applied. It is therefore appropriate to rely on this case for the proposition that the injury in a libel case occurs where the publication is circulated, but not to determine how to apply the borrowing statute.

of operations there, keeping his main accountant and lawyer in California. Thus, based on the evidence in the record and at oral argument, it can not be said that the injury occurred more significantly in either Florida or California.

The second factor, the location of the conduct giving rise to the injury, is likewise not dispositive. The "Kansas City Star" is published in Missouri, which weighs in favor of neither California nor Florida. Plaintiff contends, in the alternative, that the case bears the most significant relationship with Missouri, which, like Florida, has a two-year statute of limitations and that Missouri's statute of limitations should apply. The only connection Missouri has with this case, however, is that it is the location of publication, which is not sufficient, standing alone, to render it the state with the most significant relationship. Additionally, the article was republished throughout the country making Missouri's relationship less significant. Thus, the second factor of the test provides no help in weighing between California and Florida.

The fourth factor, the place where the relationship between the parties is centered, weighs in favor of California, but not so significantly that it, alone, would cause California to have the most significant relationship. While researching the article, the author, Bill Dalton, tried to contact Plaintiff in both Florida and California. He was finally successful but only marginally so, in California, when he attempted to question Plaintiff in a courthouse. Plaintiff responded by essentially stating that he had no comment. Plaintiff did, however, direct his attorney to respond to Defendant's questioning from Florida, but this was not a significant amount of the research done on the article. The article was primarily about his businesses and actions in California and most of the research was done there. This is the extent of the parties' "relationship."

Thus, the statute of limitations issue hinges on the third factor of the test, and since the Kansas City Star Company and Bill Dalton are located in Missouri, the dispositive issue is Plaintiff's domicile, residence, and place of business. Unfortunately, these are the most difficult questions to answer. Plaintiff has conducted fundraising activities in several states, including both California and Florida, and maintains residences in both Florida and California, so he has relationships with both states. The issue before this Court is which of those relationships bears the most significance to this case.

Domicile is established by physical presence in a place and an intent to remain there indefinitely. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 47, 109 S.Ct. 1597, 1607–08, 104 L.Ed.2d 29 (1989). The concept of "domicile" must be distinguished from that of "residence;" a person can have only one domicile, but may have many residences. *Id.* Once established, a person's domicile continues in that same place until he establishes a new domicile. *Id.; see also,* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure, § 3612 at 535–36. To establish a new domicile, one must, be physically present in the new place and possess the intent to remain there indefinitely. *Scoggins v. Pollock,* 727 F.2d 1025, 1026 (11th Cir.1984). In general, the law favors one's established domicile over a putative new domicile unless one is clearly shown to have changed domicile, and one's domicile is presumed to be the same as one's residence. 13B Wright, Miller & Cooper § 3612 at 534–35. The factors considered in determining domicile are numerous and include home ownership, driver's license, voting registration, location of family, location of business and where taxes are paid. *Id.* at 532–35. The individual's own declarations are usually accorded little weight when in conflict with the facts or when the question is close. *Hendry v. Masonite Corp.,* 455 F.2d 955, 956 (5th Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 464, 34 L.Ed.2d 315 (1972); 13B Wright, Miller & Cooper § 3612 at 532.

Plaintiff was born in India and moved to this country in 1959. He moved to California in the 1960's where he attended the University of Southern California, started a family, and began the first of several California-based businesses. In the early 1980s, while still based in California, Plaintiff began his VFW fund-raising activities, which are the subject of the allegedly libelous article. His fund-raising business began in California, ex-

panded next to Texas, then to Florida. From Florida, Plaintiff expanded the business to Louisiana, Colorado, Georgia, Indiana, Illinois, Michigan, Oklahoma, and Nevada.

In the mid 1980s, Plaintiff began to experience legal problems in California, both civil and criminal, which stemmed from his various businesses, including his fund-raising business. In 1986 he and his wife divorced. His wife got the California house, and he rented an apartment in North Miami, Florida, where his sister lived and where he was at the time conducting vigorous fund-raising activities. He later moved to a boat owned by his daughter, which was docked in Bayside, Miami. During this time, his business center remained in California, even though he was no longer soliciting funds for the fund-raising business in California. For instance, his principal accountant, Chabil Vasani, is located in California, as are the majority of his attorneys. More importantly, he maintained, and maintains to this day, a California driver's license and never obtained a Florida license. In addition, his girlfriend, Sylvia Arvayo, who served as an officer and owner of several of his fund-raising companies, resides in California.

In 1990, Plaintiff purchased a condominium in North Miami Beach in his daughter's name that was later transferred to Plaintiff in his own name. He owns a car in Florida, but it is not registered to him and could not be as he does not have a Florida driver's license. The following year, Plaintiff returned to California to deal with his various legal problems and took up residence with his girlfriend in Long Beach. Plaintiff has testified in a deposition that since early 1991 he has spent 70%–80% of his time in California. Also, Plaintiff admitted that he has been physically present in California for more time than any other state. His utilities bills since 1991 indicate that he has used very little power in the North Miami Beach condominium and has made few phone calls from the unit.

Thus, Plaintiff has never established a domicile in Florida, despite the move there in the mid 1980s. He was clearly domiciled in California since the 1960s. To establish a domicile in Florida, Plaintiff would have to establish not only physical presence there but he also would need the intent to remain there indefinitely. The burden is on Plaintiff to demonstrate that he changed his domicile to Florida; the presumption is that it remained in California. *See* 13B Wright, Miller & Cooper § 3612 at 534–35. Although he clearly had some important contacts with Florida, the rented apartment, boat, and later condominium, there is really no evidence that his business center ever moved from California.

The fact that Plaintiff established a fund-raising business in Florida does not support a change in place of business to Florida, because the very nature of his business requires him to establish businesses in many states. Nor is there any evidence of an intent to remain in Florida indefinitely. Indeed, the evidence indicates that Plaintiff intended to return (or remain) in California. He still maintains a California driver's license and never attempted to obtain one in Florida, his principal accountant remained in California, he has lived in California most of his life, and his girlfriend lives in California. Moreover, he only moved to Florida, where his sister lives, when he lost his house to his wife. This was merely a temporary move.

Most important, however, is Plaintiff's own admissions in the form of sworn statements claiming his residence and domicile as California. Since January, 1992, Plaintiff has identified his girlfriend's address in California as his place of residence in seven sworn statements. He gave one of these statements in a lawsuit in California, one in a lawsuit in Michigan, and the remaining five to various officials in Florida. These were not self serving statements made at the time for convenience, but statements purporting Plaintiff's belief as to the state with which he has the most contacts. The article in question in this case was published on September 20, 1992, nine months after the first of these sworn statements. Thus, at the very least, Plaintiff was residing in California at the time of publication.

■ The significant relationship analysis, as well as that for domicile, residence, and place of business, require the Court to weigh the totality of the circumstances of the case. *Celotex Corp.*, 523 So.2d at 143. In doing so, the Court finds that Plaintiff is a California citizen who took up residence in Florida for a

brief period while he was going through his divorce and legal troubles back in California. Plaintiff spent the better part of his life in California, developed several businesses there, was married, raised a family and divorced there, started and maintained a fundraising business there, lived with his girlfriend there, and finally, was indicted and tried there. Clearly, Plaintiff himself has a more significant relationship with California than with any other state. Moreover, the article in question focused on Plaintiff's fundraising and other activities in California. It thus seems fitting that the California statute of limitations should apply to his libel action, especially as he filed the action one day prior to the expiration of Florida's statute of limitations and 364 days after the expiration of California's. Plaintiff appears to be engaged in the very thing that Florida's borrowing statute was designed to prevent: forum shopping. California has the most significant relationship to this case and California's one year statute of limitations will bar this case from proceeding. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

1. Capital Cities Defendants' Motion for Summary Judgment filed November 28, 1995 is **GRANTED.**

2. Prodigy Services' Motion for Summary Judgment filed November 28, 1995 is **GRANTED.**

3. All other motions not previously ruled upon are **DENIED AS MOOT.**